FELIX RACKEMANN *et al.* Appellees, *vs.* MARY ELLEN TIL-
TON *et al.* Appellants.

*Opinion filed October 26, 1908.*

1. WILLS—*when spendthrift's interest in remainder is subject
to terms of original trust.* Where a testator divides his property
among his five children but as to two sons creates a spendthrift
trust for life, and provides that upon the death of either of such
sons the sum remaining in the hands of his trustee shall be di-
vided among the other children "in the same way, subject to the
same trusts and provisos, upon which they respectively receive
their portions of my estate," each child has a vested remainder in
the unused portion of the trust estate; but the interest which one
spendthrift will take in the other spendthrift's estate is not an equi-
table fee but is a life estate, subject to the original trust.

2. SAME—*when presumption against intestacy is not of controll-
ing importance.* The fact that the construction of the will arrived
at by the court may result in intestacy of the testator as to a por-
tion of the estate so infinitesimal as to have no visible form or
appreciable value, does not require that some other construction be
adopted in order to prevent overthrowing the presumption that the
testator intended to dispose of all his property by his will.

3. TRUSTS—*when trustee has power to file a bill for partition.*
A trustee authorized by the will to divide the property upon the
termination of the life estate of the *cestuis que trustent* has power
to file a bill in equity for the construction of the will and for par-
tition of the property in accordance with the rights of the respec-
tive beneficiaries.

4. SAME—*when allowance of fees to trustee is excessive.* An
allowance of $3000 to a trustee for services in filing a supplemental
bill for the further construction of the will and for making proper
distribution of the estate is excessive, where he has been trustee
of a large estate for ten years and has received the usual percent-
age of the income for his services and where no special services
will be required of him in the final distribution of the property.

5. PARTITION—*what general findings of fact in partition decree
are sufficient.* An ordinary partition decree which finds that cer-
tain parties to the suit are the owners of the real estate sought to
be partitioned, fixes the interest of each party therein and orders
partition accordingly, does not omit any material findings of fact.

APPEAL from the Circuit Court of Cook county; the
Hon. LOCKWOOD HONORE, Judge, presiding.

236—4

John Hancock, of Boston, in the State of Massachusetts, died April 1, 1859, leaving a last will, dated April 1, 1857. Francis V. Balch was trustee under the will for two of the legatees, Franklin and Washington Hancock, and upon the death of Franklin filed a bill in the circuit court of Cook county for partition and for a construction of clause 7 of the will, under which the trust estate had been held for Franklin. The cause was heard in the circuit court of Cook county and a decree rendered that the President and Fellows of Harvard College had no interest in the property under the will of Charles Lowell Hancock, one of the devisees under the will of John Hancock, who died testate after the death of his father, John Hancock, and before the death of Franklin. From that decree Harvard College appealed to this court. This court reversed the decree of the circuit court and remanded the cause, with directions to the circuit court to enter a decree in accordance with the opinion then filed. (*Harvard College* v. *Balch,* 171 Ill. 275.) After the cause was remanded to the circuit court a decree was entered in accordance with the directions given in our former opinion, except for an inaccuracy noted in the opinion which follows this statement. The property involved is located on South Water street, in Chicago, between La-Salle street and Fifth avenue, and was at one time all held in trust for Franklin and Washington Hancock. The property was paying satisfactory returns in the way of rentals, and by common consent of the parties interested no actual division thereof was made, although a decree for that purpose had been entered under the direction of this court. The case was continued from time to time on the docket of the circuit court until after the death of Washington Hancock, another of the beneficiaries under the will, which occurred August 27, 1904. Balch died in 1898, and Felix Rackemann was thereupon substituted as trustee. After the death of Washington Hancock the trustee, Rackemann, filed the present supplemental bill for partition and for the

purpose of obtaining a further construction of the will in view of contingencies and complications that had resulted from the death of Washington Hancock, and which, it was thought, were not covered by the opinion of this court, or the decree entered in pursuance thereof, in the original proceeding.

John Hancock by his will devised and bequeathed his estate to five of his children, except that he made to others certain specific bequests not necessary to be here considered, and which will accordingly be disregarded by us in this case. In order to understand the precise questions now presented it is necessary to consider only the following portions of that will, to-wit:

"(3) I give and bequeath to my son George Hancock one-fifth part of my estate, deducting from his portion whatever may be due on a settlement of my account.

"(4) I give and bequeath to my son Charles Lowell Hancock one-fifth part of my estate, deducting from his portion whatever may be due on settlement of my account.

"(5) I give and bequeath one-fifth part of my estate in trust, and direct the increase thereof to be paid over, in equal quarterly payments, to my daughter, Elizabeth Lowell Moriarty, beyond the control of any husband she may have, and her sole receipt for the same shall be sufficient. At her decease I direct so much of the said income as may be sufficient, to be appropriated for the support and education of the children of my said daughter, to-wit, John Hancock Moriarty, Joseph Moseley Moriarty and Elizabeth Hancock Moriarty, till each child shall arrive at the age of twenty-five years, when one-third of the whole principal remaining in trust is to be paid each child, excepting Elizabeth Lowell Hancock Moriarty, whose share is to be secured and divided as hereinafter mentioned. If any one of the said children of my said daughter shall die before reaching the age of twenty-five years, his or her share shall go to the survivors or survivor equally, to be paid at the same

time as he or she receive his or her share. Should any child of my said daughter marry and have issue, such issue shall represent the parent, notwithstanding the parent may not live to the age of twenty-five years. It is my will that the income of the share of Elizabeth Lowell Hancock Moriarty shall be secured to her in equal quarterly payments, beyond the control of any husband she may have, and at her death the principal shall be divided among her children, and if she leaves no children, I direct it to be divided between her brothers, John H. Moriarty and Joseph M. Moriarty, equally, or their children.

"(7) I give and bequeath one-fifth part of my estate to a trustee upon trust, to invest the same and appropriate so much of the income thereof as he in his discretion shall think needful for the support of my son Franklin. It is my will that the trustee may pay over to my son his portion of my estate at such time and in such sums as he may deem expedient, desiring him to consult the interest and welfare of my son, and that my son, in case his portion of my estate is not paid to him as aforesaid, shall have power to dispose of the same by will, in the family. I direct that at the decease of my son, if his portion of my estate should not have been paid over to him, as aforesaid, or if he should not have disposed of the same by will, the whole sum remaining in the hands of the trustee shall be divided among my other children, to-wit, George, Charles Lowell, Elizabeth Lowell and Washington, in the same way, subject to the same trusts and provisos, upon which they respectively receive their portions of my estate. It is my will that my son may appoint his own trustee.

"(8) I give and bequeath one-fifth part of my estate to a trustee, upon trust to invest the same and appropriate so much of the income thereof as he in his discretion shall think needful for the support of my son Washington. It is my will that the trustee may pay over to my son his portion of my estate at such time and in such sums as he may deem

expedient, desiring him to consult the interest and welfare of my son, and that my son, in case his portion of my estate is not paid to him as aforesaid, shall have power to dispose of the same by will, in the family. I direct that at the decease of my son, if his portion of my estate should not have been paid over to him, as aforesaid, or if he should not have disposed of the same by will, the whole sum remaining in the hands of the trustee shall be divided among my other children, to-wit, George, Charles Lowell, Elizabeth Lowell and Franklin, in the same way, subject to the same trusts and provisos, upon which they respectively re-. ceive their portions of my estate. It is my will that my son may appoint his own trustee."

It will be observed that clauses 7 and 8 are identical in phraseology, except that in 8 Franklin's name appears where Washington's name appears in 7, and Washington's name appears in 8 where Franklin's name appears in 7. Franklin and Washington each died without any part of the principal of the fund held in trust having been paid to him and without exercising the power of appointment given by the will of his father. All the other children of John Hancock mentioned in the portion of the will above quoted pre-deceased Washington.

When this case was here on the former appeal, the primary question involved was whether, after the death of Franklin Hancock without having exercised the power of appointment and before any part of the principal of the fund had been distributed to him by the trustee, the other four children named in the portion of the will above set out took a vested or contingent remainder in the property bequeathed for the use of Franklin Hancock. It was then determined that the remainder was vested, and that the portion of that property that vested in Charles Lowell Hancock passed to Harvard College under the residuary clause of the will of Charles, who pre-deceased Franklin. The principal question involved in the present litigation is, did

Washington Hancock take an equitable fee in the one-fourth of that portion of the estate in the hands of the trustee for Franklin subject to the life estate of the latter, or did he take only such interest with such rights and powers as was conferred upon him by clause 8 regarding the property by that clause bequeathed? Upon this question the circuit court held that the interest of Washington Hancock in the one-fifth interest held by the trustee for Franklin was subject to all the provisions of clause 8 of the will, and that it stood upon the same footing as the property bequeathed to Washington, or for his use, by that clause. A decree awarding partition and appointing commissioners was then entered, and from that decree this appeal is prosecuted.

The value of the real estate involved is $200,000, all of which passes under clauses 7 and 8 of the will, being that portion of the estate of John Hancock originally distributed under those clauses. There was also in the hands of the trustee approximately $11,000, arising from the rents of the property. The decree directs him to distribute that money to the parties in proportion to their interests in the real estate as fixed by that decree.

Appellants, Ellen Tilton and Delia Clegg, are daughters of James Scott Hancock, a son of John Hancock not named in the portion of the will above set out, and their father having died prior to the death of Washington Hancock, they inherit from their uncle, Washington Hancock, a portion of all of the property of which he was seized in fee at the time of his death. Their first contention is, that upon the death of Franklin Hancock before the principal of the fund was distributed to him by the trustee and without exercising the power of appointment, under the will of his father, the one-fifth devised in trust for him under the will of John Hancock passed in equal parts to his four surviving brothers and sisters, or to the representatives of such of them as had pre-deceased Franklin; that the one-fourth of

the property held by the trustee for Franklin which passed to Washington vested in him an equitable fee, his trustee holding the legal title, and that upon the death of Washington Hancock, intestate, such interest passed, under the Statute of Descent, to the legal heirs of Washington Hancock.

It is not necessary to set out in detail the interest that each party would receive if appellants' contentions be sustained. Appellants take an interest in the property irrespective of the decision of questions here involved. Their interest will, however, be materially increased if their views be adopted.

ALBERT M. KALES, for appellants.

RUNNELLS, BURRY & JOHNSTONE, for appellee Felix Rackemann.

HOLT, WHEELER & SIDLEY, for appellee Harvard College.

THOMAS G. VENT, for appellees Elizabeth L. H. Wood and others.

Mr. JUSTICE SCOTT delivered the opinion of the court:

The interest which Franklin Hancock took in the estate of his father is fixed by clause 7 of the will. The interest which Washington Hancock took in the vested remainder created by that clause is determined by the referential words found therein and by the language of clause 8 of the will, by which the primary provision for Washington was made. By that referential provision Washington takes the one-fourth of the one-fifth devised by clause 7, after the termination of Franklin's life estate, in the same way, subject to the same trusts and provisos upon which he received his portion (to so designate it) of the estate of John Hancock. That portion last mentioned he held for life with a power of appointment by will, the legal title being vested in

a trustee, who had authority to distribute to him the principal of the estate if he saw fit, and in that portion there was a vested remainder in the other four children named in the portion of the will set out in the foregoing statement, which might be defeated by a distribution of the principal to Washington or by the exercise of the power of appointment. It is entirely apparent that if the ordinary significance be attached to the words found in the referential clause, Washington, subject to his brother's life estate, would take, with reference to the vested remainder created for him by clause 7, the same interest, right and power as, and no greater interest, right or power than, given him in reference to the property bequeathed by clause 8; that after the death of Franklin and Washington, nothing having been done to defeat the vested remainders created by clauses 7 and 8, the title to all of the property bequeathed by those sections would pass to the legatees named in clauses 3, 4 and 5 of the will, or, in the event of their death, to those who represent them, and this was the view adopted by the chancellor and embodied in his decree. While it appears clear, upon an inspection of the will alone, that this conclusion is correct, appellants insist that this result involves an absurdity which could not have been contemplated by the testator, and for that reason, among others, the conclusion must be erroneous. Stated briefly, the alleged absurdity is this: If Washington took an interest in the vested remainder created by clause 7 it would be a vested remainder in one-twentieth of the estate, and if he held that one-twentieth subject to the same terms, conditions and restrictions as he held the property bequeathed by clause 8, then, as clauses 7 and 8 are identical except as to the substitution of the names of Franklin and Washington each for the other, Franklin would have a vested remainder back in the one-fourth of that one-twentieth, or in the one-eighteenth of the estate, and Washington would have a vested remainder back in the one-fourth of that one-eighteenth, or the one-three hundred and twentieth

of the estate, and so on in unending succession, the result being, that by this mathematical demonstration an infinitesimal fraction of the estate, being the least possible portion thereof more than nothing, would never vest by virtue of the will in those who take under clauses 3, 4 and 5 of the will. These mathematical oscillations would result immediately upon the death of John Hancock and are of no practical importance. They can be made use of only in tracing the precise course of the title to those who hold under clauses 3, 4 and 5. The absurdity consists only in the fact that according to this demonstration the testator died intestate as to a portion of his estate represented by the smallest fraction that can be expressed by our system of numbers. The chancellor's view does not require the destruction of that portion of the estate nor violate any fixed rule of construction, but results only in the intestacy of John Hancock as to that portion of his property. The chancellor disregarded that fraction and treated it as though it had been vested in those who took under clauses 3, 4 and 5, giving to those who took under those clauses the same interest in the property as though this negligible fraction had passed to them. This error is not reversible, as we held in *Glos* v. *Furman,* 164 Ill. 585, that one-vigintillionth of one-vigintillionth of a fraction of the east inch of a tract of real estate could have no practical existence for the purposes for which lands are acquired and held. Indeed, counsel for appellants does not contend that the decree should be reversed because that inconsiderable fraction of the title was decreed to those who hold under clauses 3, 4 and 5. The only importance attached to this array of figures is, that it shows that such a result as the one reached by the circuit court could not have been intended by the testator. We think the reasoning too refined for the affairs of a practical world. The decree of the chancellor is based on the theory that the testator, by the language used, disregarded, and died intestate, as to that small portion of his estate. Ap-

pellants argue that this construction overthrows the presumption that the testator intended by his will to dispose of all his property, and insist that a construction should be resorted to that would defeat intestacy as to any part of the estate. Where the portion as to which the testator died intestate, under a particular construction of the will, is so small that it has no visible form and no appreciable value, this presumption may be rebutted by a very slight circumstance.

The appellants' contention that Washington took in the vested remainder created by clause 7 an equitable fee subject to the life estate of Franklin, involves an incongruity of more practical moment than that shown by the mathematical demonstration alluded to above. For some reason the testator regarded Franklin and Washington as not capable of exercising proper care for the conservation of the property the income from which he desired them to enjoy, consequently he hedged their dominion over that property with the restrictions found in clauses 7 and 8 as to the property conveyed by each of those clauses, respectively. But if appellants' contention be correct he gave Washington absolute dominion over the vested remainder which he took under clause 7, and had Franklin's death occurred the day after the death of his father, Washington would have been at liberty to scatter to the four winds that one-twentieth of the estate which he obtained by the provisions of clause 7. Why such care so far as the property in which Washington took an interest under clause 8, and such absence of restraint upon his power to dispose of the property in which he took an interest under clause 7? We think the conclusion reached by the chancellor, which involves merely the holding that the testator died intestate as to the smallest possible fraction of his property, more reasonable than the theory, in view of the referential words used, that he intended to give an equitable fee to Washington in the property passing to him under clause 7, while placing upon his right to

the property passing under clause 8 the restrictions found therein.

The case principally relied upon by counsel for appellants in this connection is *Shanley* v. *Baker,* 4 Ves. 732. In that case the testator devised certain leasehold houses in trust for the separate use of his grand-daughter to receive the rents for the remainder of the term, and certain other property of the same character to his daughter for her separate use during her life, she to receive the rents thereof during the unexpired terms, and after her death to her children, if any; if none, to fall into the residue; and the residue he devised in trust for the use of his daughter and grand-daughter, to be divided equally between them, and to be paid and applied in like manner as the rents and profits of the leasehold premises were to be paid. It was there held that the words of reference in the residuary clause, "in like manner," had relation, not to the extent of the interests which the daughter and grand-daughter should take in the residue, but to the provision that they should take for their separate use, and that they therefore took the residue absolutely,—the words "in like manner" meaning only "for their separate use," and not indicating estates for life. Following that reasoning, as he says, counsel urges that the referential words found in the will of John Hancock, to-wit, "in the same way, subject to the same trusts and provisos, upon which they respectively receive their portions of my estate," should be given like construction, and held to mean only that Washington's interest in the vested remainder created by section 7 should be held in the same way as the property which he held under clause 8,—that is, it should be held in trust for him,—and that the words should not be held to limit the extent of the interest of Washington in such vested remainder; that therefore Washington, subject to Franklin's life estate, took an equitable fee absolutely in the one-fourth of the property which passes under clause 7. The referential words in the case at bar designate and apply

the provisions of the clause to which they refer with greater accuracy than did those involved in the *Shanley case*. Here Washington's vested remainder was to be held not only in the same way, but also "subject to the same trusts and provisos" upon which he received his principal bequest. We think it is only by disregarding the language last quoted that the result sought by appellants can be reached.

It is then urged that the decree entered in the circuit court in accordance with the directions given by this court when the cause was first here, is an adjudication in favor of appellants as to the construction to be placed upon the referential words. That decree found that Elizabeth L. H. Wood, as the daughter of Elizabeth Lowell, one of the children (then deceased) of the testator mentioned in clause 5 and in clause 7 of the will, took absolutely and in fee one-twelfth of the property in which a vested remainder was created by clause 7, and if the view now contended for by appellees be correct, she would have taken that interest not in fee, but as the beneficiary of a certain trust and subject to the terms and conditions mentioned in clause 5. The decree now appealed from alters the earlier decree in this respect, and provides that this one-twelfth interest is to be held in trust for Mrs. Wood in the manner provided by section 5 of the will, and that her interest therein is precisely the same as her interest in the property specifically mentioned in clause 5. Mrs. Wood does not object to this alteration of the earlier decree but consents thereto, and agrees that the former decree was inaccurate in finding that she took this one-twelfth absolutely. Moreover, if the former decree is to be looked to for the purpose of determining the question now before us it will be found inconsistent with itself, because it provided that of the property in which there was a vested remainder under the seventh clause, "an undivided four-sixteenths thereof belongs to Felix Rackemann, as trustee, as aforesaid, for Washington Hancock." The words "as aforesaid" in that portion of the decree we

think refer to the portion of the will providing for a trustee for Washington, and had the question now before us been under consideration, these words would have been consistent only with the theory that Washington took, in reference to the property conveyed to him by clause 7, only the same right, interest and power that he took with reference to the property bequeathed by clause 8. In the former suit, however, the principal question adjudicated by the court was as to whether the remainder created by clause 7 was vested or contingent, the conclusion being that it was vested, and that as a result thereof the interest of Charles Lowell Hancock therein, who pre-deceased Franklin, passed under the residuary clause of the will of Charles, devising and bequeathing the residue of his estate to the President and Fellows of Harvard College. The question as to the extent of the interest which Mrs. Wood or Washington took in the remainder created by clause 7 did not arise, was neither presented nor considered, and the evident inaccuracy in the decree in reference to the character of the interest of Mrs. Wood cannot be regarded as now controlling.

It is also insisted that the form of the decree is wrong. The will authorized the trustee to divide the property bequeathed by clauses 7 and 8, respectively, upon the termination of the respective life estates, and it is said that under these circumstances the trustee has no power to sell, but that it is his duty to convey to each of the owners of the property his, her or its undivided interest therein. The decree does not authorize the trustee to sell the property. Manifestly, he should not be permitted to partition and set off a separate parcel to each of the owners thereof without the control of some court to which the parties aggrieved, if any, by the partition made by him could apply for protection. To convey to each of the owners an undivided part, as counsel insists he should do, is not to divide the property but to leave it undivided. The trustee has invoked the power of a court of equity to partition this property in ac-

cordance with the rights of the respective parties therein. We think the method pursued unobjectionable and a substantial compliance with the will.

It is then urged that the decree is without general findings of fact upon which it is based. The decree is an ordinary decree in partition. Its form has been used in this State for at least twenty-five years without objection thereto having been made, so far as we are advised. It finds that certain of the parties to this suit are the owners of this real estate and fixes the interest of each therein and decrees partition accordingly. Counsel fails to state what particular facts should have been found that are omitted, and we are unable to discover any material omission.

The supplemental bill was filed by the solicitors for the trustee and it correctly set up the interests of the parties, and asked that the will be given a construction in accordance with the theory of the trustee as to the rights of the owners of the real estate as that theory was disclosed by that bill. Counsel for the trustee seem to have taken no part in the contest over the construction of the will, but that has been carried forward by counsel for appellants on the one side and counsel for Harvard College on the other. The decree allowed for the solicitors for the trustee, as compensation for their services, the sum of $1500, and to the trustee "for his services in this cause and for making proper distribution of said estate herein" the sum of $3000. These allowances are attacked by appellants. In view of the great value of the interests involved, in view of the fact that the solicitors for the trustee correctly set out the interests of the parties by the supplemental bill, and in view of the testimony taken on the trial with reference to the value of the services of these solicitors, we are not disposed to disturb the allowance made for them. We think, however, that the allowance made to the trustee for his services is excessive. At the time the allowance was fixed Mr. Rackemann had been trustee for about ten years, receiving the trust estate

upon the death of the former trustee, Mr. Balch, who had been his partner in business. During the time Mr. Rackemann has been trustee he has deducted from the rentals collected, current and usual percentages for his services. The allowance was made for his services to the estate rendered in this suit and for making distribution of the entire estate. He states in this court, by his solicitors, that actual partition of the property "seems feasible and the parties in interest are now planning such partition." If such actual partition should be made in this proceeding no further service in reference to the principal of the estate will be required at the hands of Mr. Rackemann. All that he will be required to do farther will be to distribute the money in his hands. If the property is found to be indivisible the proper course is for the court to direct a master, special commissioner or other officer to make sale and distribute the proceeds. For the services rendered by such master, special commissioner or other officer the fees allowed by law to a master may be paid, and Mr. Rackemann, as trustee, will have nothing to do either with the sale or distribution of the proceeds. For such service as he has rendered in reference to setting this proceeding on foot and conducting the litigation, and for such service as he may render in distributing the rentals on hand at the time the decree was entered, we think $1500 is sufficient compensation. An allowance was also made to the solicitor for appellants and to the solicitors for Harvard College for services rendered by them in aiding the chancellor to arrive at a correct construction of the ambiguous clauses of the will. Some objections have been made to these allowances by the briefs. These objections we cannot consider on account of the lack of necessary assignments of error and cross-error.

The decree now under review will be modified by striking therefrom, in that portion thereof fixing the allowance to the trustee for his services, the figures "3000" and inserting in lieu thereof the figures "1500." In all other re-

spects that decree will be affirmed. The costs of this court will be adjudged one-half against appellants and one-half against appellees.     *Decree modified and affirmed.*