# MAUDE PARRISH et al. v. JOHN TREADWAY et al., Appellants.

### Division One, February 29, 1916.

1. **MINOR: Conveyance of Real Estate.** The deed of a minor· is not void, but only voidable; and to be avoided must be disaffirmed by him after reaching his majority.

2. ——————: ——————: **Limitations.** The deed of a minor conveying his interest in real estate, unless disaffirmed within ten years after he reaches his minority, is valid, and cannot be avoided by him.

3. ——————: ——————: ——————: **Remainderman.** The act of disaffirmance of a conveyance of real estate by a minor goes to the instrument itself, and has no particular reference· to the estate conveyed or attempted to be conveyed. If the deed conveyed the contingent reversion of a remainderman while he was yet a minor and while the life tenant was yet living, the remainderman's deed cannot be disaffirmed by him after the expiration of ten years after he reached his majority, it matters not how long the life tenant lived after the deed was executed.

4. ——————: ——————: ——————: **Disability of Coverture.** And the deed of a minor who was a married woman at the time it was made, must be disaffirmed within ten years after she first ·became discovert, having then reached her majority, although she may have soon thereafter married a second time. The disability of a second coverture cannot avail her. And where the only act of disaffirmance is by bringing suit, the petition must be filed within ten years after she first became discovert.

5. **PARTITION: Attorney's Fee.** No allowance should be made counsel as general costs for services in contested matters between the parties in a partition suit. But an allowance to plaintiff's attorney should be taxed as costs for such work as counsel would do in an ordinary non-contested partition, although, after new plaintiffs were added, there were brought into the case contested matters between them and defendants because of a denial of the validity of the deeds previously made by some of them.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer,*
Judge.

REVERSED AND REMANDED (*with directions*).

*F. J. Duvall* and *Pearson & Pearson* for appellants.

(1)   Deeds of minors are not void but only voidable, at their election upon attaining their majority, respectively. Their respective deeds were operative, sufficient to pass, and did pass, to their respective grantees, and those claiming under them, whatever right, seizin, title and estate, said grantors respectively, though minors, may have had in the property described in the petition at the date thereof. Harris v. Ross, 86 Mo. 95; Huth v. Marine Ry. & Dock Co., 56 Mo. 209; Singer Mfg. Co. v. Lamb, 81 Mo. 225; Shafer v. Diete, 191 Mo. 389; Goodman v. Simmons, 113 Mo. 127. (2)   Unless they disaffirmed their deeds, at some period within ten years from the date they, respectively, reached their majority, they were forever thereafter barred from any rights and powers to disaffirm. Harris v. Ross, 86 Mo. 95; Linville v. Greer, 165 Mo. 398; Huth v. Carondelet, 56 Mo. 209.   (3) The right to disaffirm a contract or deed, made by an infant is a personal privilege, and must be exercised by him after he attains his majority, and within ten years from that date. It is not dependent in this case, upon the death of Phoebe E. Henderson, or her occupancy of the land described in the deed. But it depends solely on the will and pleasure of the minor exercised within ten years from the date of his majority. Huth v. Marine Ry. & Dock Co., 56 Mo. 209; Jackson v. Carpenter, 11 John. 541; Harris v. Ross, 86 Mo. 96; Linville v. Greer, 165 Mo. 398.

*R. L. Sutton, D. A. Ball* and *Hostetter & Haley* for respondents.

While the Statute of Limitations relative to real actions may be a guide as to the time within which a late minor may disaffirm his deed according to the holding of some of the courts, yet in the case at bar,

that principle, if conceded to be sound, would not aid the appellants. Here the children of Phoebe E. Henderson during her lifetime made deeds. They were not her bodily heirs. The most that could be claimed for them was that they were her prospective bodily heirs. They had no vested interest in the land or in the trust fund at the time of the execution of their deeds. They were not entitled to any interest in the property until the death of their mother. Consequently the Statute of Limitations would not commence to run against them until the date of their mother's death. The Statute of Limitations does not run against any one who has no right of possession; and where there is an outstanding estate, all the authorities agree that during the continuance of such particular estate, the remainderman cannot maintain an action for possession. Littleton v. Patterson, 32 Mo. 357; Carr v. Dings, 54 Mo. 95; Miller v. Bledsoe, 61 Mo. 96; Dyer v. Brannock, 66 Mo. 422; Brown v. Moore, 74 Mo. 633; Linville v. Greer, 165 Mo. 380; Givens v. Ott, 222 Mo. 422. Mere silence, however long, or omission to act, is not an affirmance. Youse v. Norcum, 12 Mo. 549; Huth v. Carondelet, 56 Mo. 210; Linville v. Greer, 165 Mo. 380, 398; Stull v. Harris, 2 L. R. A. 742.

GRAVES, P. J.—This is a partition suit from Pike County. In 1870 Washington Treadway and wife, Elizabeth, deeded a certain tract of land in Pike County to John Treadway "for the use and benefit of Phoebe E. Henderson and the heirs of her body" as alleged in the petition. By his last will he devised to John Treadway another small tract for the same purpose. These two tracts constitute the subject of litigation here. Neither this deed nor will is in evidence. The trial court found in accordance with the petition thus:

"The court being fully advised in the premises doth find the defendant John Treadway held in trust

for Phoebe E. Henderson, and her bodily heirs, the following described real estate situated in Pike county, Missouri, to-wit:''

This is not a disputed matter and details need not be given. Suffice it to say that where a child of Phoebe E. Henderson died before she did, and such child left heirs, counsel seem to have conceded that a prior deed from such child conveyed no interest as against the grandchildren. So much for the construction of these trust instruments.

Phoebe E. Henderson died March 20, 1912, leaving as her bodily heirs certain children and grandchildren. She had nine children, but only seven survived her. The two who died before she did left children. The seven children surviving the mother made deeds to their interest in the lands prior to the mother's death, except the deed of Hurley N. Henderson did not cover the nine-acre tract covered in the will mentioned. The plaintiff, Maude Parrish, daughter of a deceased son, had never conveyed, nor had her father. A daughter, Lizzie Henderson, who married first Rice and then Nelson, made a deed, but died before the mother. Appellants claim nothing under this deed. Three of the children who made deeds made them just prior to reaching their respective majorities, and the trial court found these deeds to be void. These three interests and a dispute over the attorney's fee allowed counsel for plaintiff are the only questions here.

The plaintiffs are all the heirs of the body of Phoebe E. Henderson, and the defendants are the parties purchasing from the children and John Treadway, the trustee in the instruments of trust. For the present this sufficiently states the case.

I. The finding of the court which is first challenged by counsel for appellant is:

"The court further finds Olin G. Henderson and
Thomas S. Henderson and Anna N. Megowan, form-

**Minor's Deed.**  erly Anna N. Wells, were minors at the
time they made their deeds pleaded in
the answers, and the court further finds that nothing
passed to the grantees in any of said deeds."

The following unchallenged statement appears in
appellant's brief:

"The record shows, that this second amended
petition, in which all of the plaintiffs, except Maude
Parrish, were for the first time made plaintiffs, was
filed July 15, 1912. That Thomas S. Henderson was
born July 12, 1876; that he and his wife executed the
deed in question, August 14, 1896; that he attained
his majority, July 12, 1897, which was fifteen years
before the institution of this suit. That Anna N.
Megowan, nee Wells, was born February 10, 1879; that
she and her husband executed the deed in question
August 9, 1895; that she attained her majority Febru-
ary 10, 1897, which was fifteen years and four months
before the institution of this suit. That Olin G. Hen-
derson was born May 9, 1881; that he and his wife
executed the deed in question October 4, 1901; that
he reached his majority May 9, 1902; which was ten
years and two months before the institution of this
suit."

It appears that the consideration paid in each in-
stance was about $200, and respondents claim that the
conveyance not only covered their interest in the land,
but their interest in a $2000 trust fund in addition.
The matter of consideration is not material, because
not an issue under the pleadings. Upon this branch
of the case there are but two questions to be answered:
(1) is the deed of a minor void or merely voidable, and
(2) if voidable, within what time must he disaffirm?
There is no act of disaffirmance shown except the peti-

tion, so that dates are easily calculated. Seemingly the case below was tried on the theory that these deeds were void, or on the theory that they did not have to disaffirm until after the death of the mother in 1912. When made, these deeds conveyed the contingent remainder of these parties in the lands involved. The grantees took the title subject to the contingency of the death of the grantor prior to the falling in of the life estate, or in other words, prior to the death of the mother. The parties so construed these deeds in the course of the trial. In the record we find:

"Mr. Gene Pearson: I now offer in evidence 'Defendants' Exhibit Three,' being a warranty deed from Lizzie Rice to Benjamin G. Patton, dated the 29th day of August, 1895.

"Mr. Hostetter: We object to that being read in evidence, because Lizzie Rice, according to the testimony thus far adduced, died in 1903, and being a daughter of Phoebe Henderson and having died before Phoebe Henderson, nothing passed under the deed. Nothing could pass under the deed offered in evidence, and that's admitted by the counsel for the defendants. I think you practically state you didn't make any claims, is that right?

"Mr. Gene Pearson: Well, that's right."

The heirs of Lizzie Rice, *nee* Lizzie Henderson, recovered in the case and appellants do not challenge their recovery. We give this construction of the two trust instruments as given by counsel, because the two instruments are not before us for construction.

From an early day it has been held that a deed made by a minor is not void, but merely voidable. In the case of Singer Manufacturing Co. v. Lamb, 81 Mo. 1. c. 225, this court through Martin, C., said:

"The deed of a minor is not void, but only voidable, after he reaches his majority. [Peterson v. Laik,

24 Mo. 541; Huth v. Marine Railway & Dock Co., 56 Mo. 202.] The right to disaffirm may be exercised by his heirs and representatives within the time permitted to him for doing the act. [Land & Loan Co. v. Bonner, 75 Ill. 315.] It requires no affirmative act to continue its validity, but only an absence of any disaffirming acts. It remains valid in all respects, like the deed of an adult, until it has been disaffirmed by the maker, after reachig his majority."

LAMM, J., in Shaffer v. Detie, 191 Mo. l. c. 389, said:

"Now it may be conceded to appellant that the deed of a minor is not void, but only voidable; for such is the law. The policy of the law is to make the conveyance of a minor effective or non-effective, as a minor grantor may elect to affirm or disaffirm when he attains the mature judgment of full age; and all persons, whether innocent purchasers or not, must deal with the minor's title to real estate subject to this privilege, since his title passes lame and halt with an infirmity, of which the world at large at its peril must take notice. But this is a personal privilege to be exercised by him, or in case of his death, or being *non compos,* by his heirs or personal representatives; so that, the mantle of privilege to object to such deed does not fall upon the shoulders of strangers to the transaction, and least of all upon one holding and asserting a hostile title, as here."

We shall not go further with authorities. The deed of a minor remains good and conveys title until such deed is disaffirmed. The minor is not required to act until he reaches his majority, but he must act to thwart the deed. Within what time he must act we take in the next paragraph.

Parrish v. Treadway.

II. These deeds being voidable merely the next question is, within what time must minors disaffirm their deeds? And we might add, from what date the time to disaffirm begins to run? Answering the last question first, we are forced to say that the minor is not required to act until he reaches his majority, and the time could not begin to run prior to that time.

**Disaffirmance by Minor of Deed: Limitations.**

The time allowed for disaffirmance is not statutory, but court-made law. This court has considered the question several times, and the rule established seems to be within ten years after the infant reaches his majority. The time fixed for disaffirmance by the court has been made analogous to the Statute of Limitations for real actions.

In the very early case of Peterson v. Laik, 24 Mo. l. c. 544, Scott, J., made use of this language:

"That a deed executed by one who has attained his majority, conveying lands, which he had alienated during his infancy, is a disaffirmance of the deed of alienation made during his infancy, is the well-settled doctrine of this court. The acquiescence of the infant, after his reaching his full age, for a period short of that which would secure a title by the Statutes of Limitations, does not destroy or take away the right which the law for wise purposes has conferred on infants of disaffirming their deeds. Whether the infant may not after attaining full age, within a shorter time, by his declarations, acts or conduct, restrain himself from a disaffirmance of his acts done during infancy, is a question not presented by any thing contained in this record."

The foregoing from Scott, J., it might be said, hardly formulates the rule, but it has been made the basis for the rule, for in Huth v. Railway & Dock Co., 56 Mo. l. c. 209, this court through Napton, J., said:

"There is no doubt, that a conveyance by an infant passes the title, subject to a right on the part of the infant when reaching full age, to disaffirm this contract and convey to some third person. What length of time will be allowed the infant after attaining majority, to disaffirm, is a question which has never been passed upon by this court so far as my examination has extended. . There are loose *dicta* in text books, and perhaps a decision or more of respectable courts, that this disaffirmance must be made in a reasonable time, and that mere acquiescence beyond this reasonable period is equal to an affirmance. That is a very indefinite expression, 'and amounts to very little more than that the acquiescence of the adult, laboring under no disabilities, must be attended with such acts as to amount to a virtual recognition of the validity of his deed.

"I incline to think that Judge, Scott's observation in Peterson v. Laik laid down the only practicable rule on the subject. That was, that, in general, the Statute of Limitations would be the guide—but that in cases where an infant does something totally inconsistent with an intention to disaffirm, as in receiving rent on a lease made in his infancy, after he becomes of age, an affirmance may be inferred.

"I do not find any authority for the doctrine, that mere silence or inaction, unless continued so long as to effect a bar under the Statute of Limitations, will prevent the infant from disaffirming."

This rule as to the time in which the infant must act, that is, within ten years after attaining majority, has been recognized later by this court. [Harris v. Ross, 86 Mo. 89; Linville v. Greer, 165 Mo. 380.]

The act of disaffirmance goes to and effects the deed. It does not necessarily mean a suit, although a suit to recover the land would be a disaffirmance of the deed. The time fixed for the disaffirmance of a deed by an infant is not a Statute of Limitations, but is

a working rule of law established by the courts, and in reasoning out what the rule should be as to the time of disaffirmance, the courts have made it analogous to the Statute of Limitations for real actions. The date of the beginning is the advent of majority, and the time expires ten years after the advent of majority. The act of disaffirmance goes to the instrument itself, and has no particular reference to the estate conveyed or attempted to be conveyed. For this reason the date of the mother's death in 1912 cannot be taken as the beginning of the ten years in which disaffirmance of the deeds might be allowed under the law. Before her death they had a contingent remainder which they could convey, and this was a substantial right and interest. If they desired to avoid the conveyance of that interest or right, they should have done so by some act of disaffirmance within ten years from the advent of majority. This they did not do. The last positive expression of this court that we find is that of BLACK, P. J., in Lacy v. Pixler, 120 Mo. l. c. 388:

"There is a line of cases which hold that a minor must affirm his deed within a reasonable time after he attains majority. On the other hand many courts hold that he may exercise his right to disaffirm the deed at any time within the period of the Statute of Limitations, *after majority*, there being no ratification."

The italics are ours. That learned jurist then adds that he is saved further investigation by the holding of this court in Huth v. Carondelet Marine Ry. & Dock Co., 56 Mo. 202-209, which announces the ten-year rule.

The trial court erred in holding that the deeds of Thomas S. Henderson and Olin G. Henderson, passed no title.

The deed of Anna N. Megowan we take later, because of another question being involved therein.

III. Annie Henderson, now Annie Megowan, was married twice. She was born February 10, 1879.

**Married Female Minor.** She was married to Alburtus Wells on the 19th day of March, 1895, and was therefore just passed sixteen years of age at her marriage. She made the deed involved in this case on August 9, 1895, and was therefore just sixteen years and six months old at the making of the deed. She lived with the first husband, Wells, for seven years, and until his death. This would make her a *femme sole* in March, 1902, according to her testimony. The question was asked her: "Q. How long after your marriage did Mr. Wells live? A. I lived with him seven years." We quote her language because counsel for respondent claim that she did not become discovert until less than ten years before the petition was filed in this case. They say she was under double disability when the deed was made, i. e. both infancy and coverture. But under her own evidence she had recovered from both long before the filing of the second amended petition in this case, which is the first time she did any thing to disaffirm her deed. This second amended petition was filed July 15, 1912, and she became discovert March 19, 1902. Ten years and nearly four months expired after she became discovert before this suit was brought. When the time began to run, as it would at the latest in March, 1912, when she became discovert, it would continue to run even though she married again. This on the theory that this rule as to time for disaffirmance is analogous to statutes of limitation, and such is the view of this court.

The facts in the case as above indicated makes it unnecessary for us to discuss the question as to whether or not under the Married Woman's Act as it stood when this deed was made, coverture would have been a good excuse for not disaffirming the deed. We

leave that mooted question to a case where it becomes vital. It therefore follows that the trial court was also in error when it held that Mrs. Megowan's deed conveyed no title.

IV. This leaves but one further question. Appellants claim that the allowance of $290.75 as attorney's fee to plaintiffs' counsel, to be fixed as costs, is wrong. They claim that the whole case was contested issues, and therefore no part of plaintiffs' counsel fees should be taxed as costs.

*Attorney's Fees.*

The suit was first brought by Maude Parrish, and all other parties were made defendants. Later, July 15, 1912, this second petition was filed, and the parties named as they now appear. This petition does state that none of the defendants have any interest in the property, and ask the court to so adjudicate. The answer set up the title of the defendants and asked for partition. The reply averred that the deeds made by the heirs conveyed nothing. The trial took the ordinary course of partition suits where there are contested issues, as well as non-contested issues, between the parties. The court heard evidence on this attorney's fee. It made the following finding thereon, which is justified by the evidence:

"The court finds in this case that prior to the institution of this suit, Mr. Robert L. Sutton was employed by plaintiff, Maude Parrish, as her attorney, to institute this suit under an agreement that he should have a reasonable attorney's fee for his services in this case, which fee should be fixed as to amount by the court and charged as general cost of the case. That Mr. Sutton is a resident of Troy, Lincoln county, Missouri, and a member of the Lincoln county bar, and that he had associated with him Mr. Hostetter, before the suit in partition was filed; that after the suit was filed Mr. Ball became associated with Mr. Sutton

and Mr. Hostetter as attorneys for the plaintiffs in this case throughout the proceedings and up to the present time. The court finds that $290.75 is a reasonable fee for Mr. Sutton and his associates, Mr. Hostetter and Mr. Ball, for their services rendered in the matter of the partition and sale of the real estate in this case, that is, for the partition suit itself. The court awards them nothing for services rendered upon any issue that was contested as between any of the plaintiffs and the defendants, Lowell and Kenneth Patton and O. H. and M. W. Treadway.''

We concede it to be the law that no allowance should be made counsel for their services in contested matters between the parties in partition. The allowance which the statute contemplates may be taxed as costs is for such work as counsel would do in an ordinary non-contested partition suit. If the contest grows out of the construction of the deed or will of the ancestor, and not out of things done by the parties, the services in such a contest might be taxed as costs. In this case the evidence upon the allowance was confined to such class of service, and the court so finds as above indicated. After the new parties plaintiff were added there was a pleaded ''legal conclusion'' to the effect that defendants had no interest, but the whole trial shows that Maude Parrish, the original plaintiff, had no contest with any other party to the suit. We could, if necessary, eliminate from consideration all other plaintiffs, and allow this fee stand in favor of Maude Parrish. As to her there was a straight partition suit. The land sold for nearly $6,000 and the evidence is that five per cent of the sale value is a reasonable attorney's fee for doing the work required in ordinary partition suits, leaving out all services on contested matters. As to this matter the judgment *nisi* should be affirmed.

The judgment for the other reasons will be reversed and remanded, with directions to the trial court to enter up a new judgment in accordance with the views herein expressed. The data are all before the court, and there is no need for a retrial. Let the judgment be reversed and the cause remanded with the directions aforesaid.

It is so ordered. All concur; *Woodson, J.,* in separate opinion.

WOODSON, J. (concurring)—I understand the opinion of Brother GRAVES to hold that ten years is the limit of the period in which a minor may disaffirm his or her deed, regardless of the period in which the estate conveyed thereby is barred by the Statutes of Limitations, whether that be ten, twenty-four or thirty years; and with that understanding I concur therein.