Henrietta HALEY (Plaintiff), Respondent,

v.

Milford HORWITZ et al., Defendants,

Bertha Schneider, Maurice Cummins, Lillian Friedman, and Meyer Horwitz (Defendants), Appellants.

No. 29565.

St. Louis Court of Appeals.

Missouri.

May 15, 1956.

Motion for Rehearing or to Transfer to Supreme Court Denied June 8, 1956.

Max W. Kramer, Jerome Kalishman, Kramer & Chused, St. Louis, for appellants.

John H. Haley, Bowling Green, pro se.

Thomas R. McGinnis, St. Louis, pro se.

Thompson, Mitchell, Thompson & Douglas, St. Louis, James M. Douglas, and Courtney Shands, Jr., St. Louis, for respondent English.

ANDERSON, Presiding Judge.

This is an appeal from a final judgment in a partition suit fixing and allowing attorneys' fee to plaintiff's attorneys and to the special commissioner appointed to conduct the sale in partition. The point urged by appellants is that the attorneys' fee and the fee for the special commissioner are excessive, and that the trial court considered improper factors in determining the fee allowed to plaintiff's attorneys.

On December 7, 1952, Julius Horwitz died intestate, leaving as his heirs forty-six nieces, nephews, grandnieces and grandnephews. At the time of his death he owned forty separate parcels of real estate, thirty-eight of which were located in the City of St. Louis, one in St. Louis County, and one in Wright County, Missouri. In December, 1952, plaintiff, Henrietta Haley, a niece and heir at law of the said Julius Horwitz, filed this suit in the Circuit Court of the City of St. Louis seeking the partition of the aforementioned real estate.

Originally, thirty-four persons were made parties defendant. Subsequently, other heirs were discovered and it became necessary to file an amended petition to join such persons as parties. Thereafter, the St. Louis Housing Authority was made a party defendant because of a claim by it that the deceased had given it an option on some of the property. Later, a niece died and her legatees were joined. Eventually, there were fifty-three parties defendant to the action.

On August 27, 1954, the court, after a hearing, issued its interlocutory decree in partition appointing John P. English as special commissioner and ordering him to sell the forty parcels of real estate at public auction according to the laws of this state governing partition sales.

Thirty-five of the thirty-eight parcels situated in the City of St. Louis were sold at public auction in bulk for $165,000, the individual bids thereon having aggregated $160,250. The other three parcels situated in the City of St. Louis were sold individually at public auction for a total of $9,950. The parcel located in St. Louis County was sold at public auction for $100, and the parcel located in Wright County was sold

at public auction for $800. The total of all sales made by the special commissioner was $175,850, and the expenses thereof were $5,125.01.

The commissioner's report of sale contained a prayer for "such compensation as may be adequate and fair for the services rendered by him * * *." Thereafter, plaintiff's attorneys, John H. Haley, and Thomas R. McGinnis, filed an application for an allowance of a fee for their services in the case. A hearing was had on the matter of fees, which resulted in an allowance of $17,500 to the attorneys, and $10,000 to the special commissioner.

The appellants herein, Bertha Schneider, Maurice Cummins, Lillian Friedman, and Meyer Horwitz, filed a motion to set aside the orders allowing said fees. This motion was overruled, and an order of distribution was entered by the trial court on December 13, 1954. On December 15, 1954, appellants filed a motion to set aside the order of distribution, which motion was on said day overruled. Thereupon, appellants gave notice of their appeal to the Supreme Court. On February 13, 1956, the Supreme Court, on the ground that it lacked jurisdiction of the appeal, entered its order transferring the case to this court. Haley v. Horwitz, 286 S.W.2d 796.

Plaintiff's attorney Thomas R. McGinnis testified in support of the motion for the allowance of attorneys' fees. He stated that he prepared the original petition which was filed December 23, 1952. In February, 1953, an amended petition was filed in order to join other heirs whose existence was not known at the time of the filing of the original petition. It was necessary to obtain service of process on all of the heirs. There were forty-six heirs living in Missouri, Iowa, Illinois, Wisconsin, Kansas, Texas, Nevada, Florida, California, Arkansas, and Louisiana. Service by mail was obtained on all defendants residing outside the State of Missouri. The St. Louis Housing Authority was joined as a party defendant for the reason it was claimed that Julius Horwitz prior to his death had given said Housing Authority an option to

purchase three parcels of property located in the City of St. Louis. As to certain parcels, it was necessary to obtain certificates and quitclaim deeds in order to clear the titles to said properties. It was also necessary to search for heirs who might claim an interest from the original title owners of said properties, for the reason that Julius Horwitz had acquired some of these parcels by tax deed.

It further appears from the testimony of McGinnis that one of the heirs filed an action in the Federal Court in the nature of a partition suit. Plaintiff's attorneys filed in said cause a motion to dismiss said proceedings. They appeared in the Federal Court to argue this motion. They also filed a motion to dismiss said action after the decree was entered in the case at bar.

In the case at bar some of the defendants filed motions to dismiss, or, in the alternative, to stay the proceedings. Plaintiff's attorneys appeared in court to oppose these motions.

Mr. McGinnis further testified:

"It was also necessary to determine as to whether or not the option to purchase by the St. Louis Housing Authority was valid. It was necessary to determine all of the heirships and present such testimony to the court. * * * considerable time was consumed in ascertaining correct legal descriptions of the property and ascertaining all of the parties who had an interest in it.

"The decree of partition was prepared, which consisted of twenty-one pages, following which the Title Company was employed to check the titles to the respective pieces of property, as well as to check the partition suit, which they found in order.

"The notice of sale was prepared and the sale was conducted in the City of St. Louis, at which thirty-five pieces of property were sold, aggregating a total sale of one hundred and seventy-five thousand dollars. The order of sale

was prepared for St. Louis, and Wright County, the latter of which is some two hundred miles from St. Louis, and the sales were conducted in both these counties.

"In order to assist the Commissioner, and to encourage the bidding, accompanied by the Commissioner, I viewed each piece of property, and we also visited the adjacent property owners, owners of property located in the different communities, to urge them to attend the sale and bid on the property. In addition to personal calls, a number of letters were written to a number of companies I thought might be interested in making an offer of purchase.

"We likewise put up signs advertising the date and place of sale, and in response to the signs a great number of telephone calls were received, in which information was furnished relative to the property and to the sale.

"The report of sale was prepared and made to the court, and the court approved said report of sale, and it was necessary to file the Decree of Partition in the Recorders' offices of the respective counties.

"Preparation of the Commissioner's Deeds and preparation and the filing of the petition for the order of distribution and presented same to the court.

"In addition to the above, all of my time was consumed from July until after the sale in October, in working on this matter, and my other business was neglected. * * * I began on the 21st or 22nd day of December, 1952. * * * It (the case) has been very active since then. * * * I would say a reasonable attorneys' fee would be twenty-five thousand dollars."

Frank P. Motherway, a practicing lawyer in the City of St. Louis, testified that a $25,000 fee for the services performed by plaintiff's attorneys in this case would not be unreasonable.

John P. English took the stand and testified in his own behalf. He stated that he had been in the real estate business for twenty-seven or twenty-eight years. After his appointment as special commissioner he prepared a list of the various properties, setting out the description, size of the buildings and lots, and the annual rentals, which he published in the St. Louis Daily Record. He then inspected each parcel and interviewed people who lived adjacent to each parcel who might be interested in making a purchase. He also mailed twenty-three hundred circulars to real estate dealers in St. Louis and St. Louis County, and one hundred of such circulars to others. He contacted business people who he thought would be interested in the properties. He verified the rental schedule and called on the tenants to see if they might be interested. He had signs placed upon the properties giving the time and place of sale. He further testified:

"I received a great number of telephone calls inquiring about the property, calls came in at the office all day long. * * * I also talked to a great number of real estate brokers and other people who had money to invest to encourage them to bid on the property, either in individual parcels, or as a bulk bid. * * * St. Louis County, we had a hard time locating the lots, and we finally located them, and I paid a visit to the fellow who ran the paper there, to see him about buying that—he offered to give us a check for ten dollars for the two lots; I contacted another man and he gave me a check for fifty, * * * we sold two lots on the Court House steps for one hundred dollars. * * * I made a trip of two hundred miles into Wright County to inspect the property offered for sale there, and arranged for publication of the sale. I talked to farmers who owned adjacent farms, and talked to office holders in Hartville, the county seat of Wright County, advising them of the property being offered, and encouraged them to either make a bid or to urge their friends to make a

bid for the property. I prepared a notice of sale which was published in the St. Louis Daily Record, covering the properties in St. Louis, and in the St. Louis Countian covering the properties located in St. Louis County, and the Wright County Republican covering the property in Wright County. I arranged for an auctioneer to call out the bids and supervised the sale by recording each bid for each parcel of property, and I prepared the receipts for the individual parcels of property, and handled the down payments which were accepted subject to a higher aggregate bid for the property in bulk.

"I was interested in persuading a bidder to offer $4,750.00 more in bulk than the aggregate of the individual bids. It was estimated from my experience as an appraiser and real estate operator that the properties brought an estimate of $35,000.00 to $40,000.00 more than what ordinarily would have been gotten from a private sale. The bulk bid being higher, arrangements were made to return the down payments on the individual bids to the individual bidders, after the court approved the sale of the property in bulk, and prepared the Commissioner's Deeds for the parcels of property, and supervised the preparation of the petition for the order of distribution, and I notified each of the heirs of the proportionate amount he or she was likely to receive * * *. From the people I talked to, we got what I consider the highest price possible. * * *

"The Court: * * * what is the usual commission on the sale of property—sale of real estate? A. Five per cent, Your Honor.

"By Mr. McGinnis: Q. In the average sale of real estate, do you do the work that you did in this sale? A. No, this was more work. I spent a lot of time in Wright County, * * * seeing people and interviewing people. I meant the ordinary sale commission is five per cent."

The witness further testified that the Wright County property brought $800, and the St. Louis County property $100.

It is urged that the trial court considered improper factors in fixing the fee allowed plaintiff's counsel. At the hearing, one of plaintiff's counsel detailed a number of services performed by him, which services appellants allege were not proper for consideration by the trial court in determining the amount to be allowed. This complaint is well taken.

■■ Under the decisions, only such work as counsel would do in an ordinary non-contested suit should be considered in fixing the fee to be allowed. Parrish v. Treadway, 267 Mo. 91, 183 S.W. 580. However, it will be presumed that the trial court in the case at bar considered only such evidence as was competent and relevant. Lewis v. S. & M. Frankle, 158 Mo. App. 262, 138 S.W. 64. Likewise, it is our duty to disregard the incompetent testimony and reach our conclusion as to the reasonableness of the allowance upon a consideration of the evidence properly bearing on that issue.

■■ In determining what is a reasonable allowance for legal services many and varied elements or factors are to be considered. Among the principal elements to be considered are the amount and character of the services rendered, the nature and importance of the litigation, the degree of responsibility imposed on or incurred by the attorney, the amount of money or the value of the property involved, and the degree of professional ability, skill and experience called for and exercised in the performance of the services. The problem should also be approached with a view to common sense realism; that is to say, it should pose an amount that public standards will approve for the work done, the time consumed, and the skill required.

There can be no doubt but that plaintiff's counsel spent more time and effort in marshalling the facts in this case than in an ordinary partition suit. There were forty-six heirs, many of whom resided in foreign

jurisdictions. These heirs had to be ascertained and located. Numerous consultations must have been had on this phase of the case. There were forty pieces of property, and descriptions of these had to be obtained. Amended petitions had to be filed bringing in new parties. In addition, there was a trial and all the work incident thereto. The case was skillfully handled by able and experienced counsel, and a satisfactory result obtained. However, there were no intricate questions of law raised which involved research into the law. The issues were simple, and no great amount of study was required for the filing of the case or the trial thereof. The fact questions were not complex or difficult. The case took the usual course from its inception until judgment was entered and a sale had.

In this case one of plaintiff's counsel detailed at length the amount, character and value of the services performed. He gave it as his opinion that a reasonable fee for those services would be the sum of $25,000. In this estimate of the value of the services he was corroborated by the testimony of Mr. Motherway. The defense offered no testimony upon this issue. The trial court found the services to be reasonably worth $17,500.

■■ While we hesitate to question the finding of the trial court on this issue, it is our duty to do so where the judgment shocks the conscience of the court. In our opinion the fee allowed is excessive to such an extent as to constitute an abuse of judicial discretion. Having reached this conclusion, it becomes our duty to determine the reasonable value of the services rendered and to give such judgment as the trial court ought to have given. Section 512.160 RSMo 1949, V.A.M.S.; Bucknam v. Bucknam, 347 Mo. 1039, 151 S.W.2d 1097; Fisher v. Peterson, Mo.App., 240 S.W.2d 176; Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 145 S.W.2d 134.

In determining this matter it is always profitable to examine allowances heretofore made in similar cases. In Forsee v. McGuire, 109 Mo.App. 701, 83 S.W. 548, the property sold for $80,000, and an attorney's fee of $1500 was allowed. In Donaldson v. Allen, 213 Mo. 293, 111 S.W. 1128, the property sold for approximately $100,000, and the court allowed an attorney's fee of $5,000. In Tanner v. Tanner, 199 Mo.App. 145, 203 S.W. 239, the agreed value of the farm partitioned was $12,000, and a fee of $400 was allowed. In Jennings v. Jennings, 225 Mo.App. 1010, 33 S.W.2d 165, the gross sale price was $4,500, and a fee of $225 was allowed. In Connor Realty Co. v. St. Louis Union Trust Co., 176 Mo.App. 260, 161 S.W. 865, the property was worth $24,000, and an attorney's fee of $720 was allowed. In Parrish v. Treadway, 267 Mo. 91, 183 S.W. 580, 583, the court said: "The land sold for nearly $6,000, and the evidence is that 5 per cent. of the sale value is a reasonable attorney's fee for doing the work required in ordinary partition suits, leaving out all services on contested matters. As to this matter the judgment nisi should be affirmed." In Matthews v. Lytle, 220 Ala. 78, 124 So. 197, the property was worth $40,000 to $75,000. Fees in the sum of $3000 were allowed. In Croley v. Adkins, 305 Ky. 765, 205 S.W.2d 332, the property was worth $65,000. A fee of $2500 was held not to be excessive. In Murray v. Hays, 51 Utah 211, 169 P. 264, the property sold for $350,000, and $10,000 was allowed the attorneys by the court. In Dent v. Foy, 210 Ala. 160, 97 So. 627, the property sold for $65,000, and an attorney's fee of $2000 was allowed. In Rackemann v. Tilton, 236 Ill. 49, 86 N.E. 168, the property sold for $200,000, and an attorney's fee of $1500 was approved. In Mabry v. Mudd, 132 Neb. 610, 272 N.W. 574, the property sold for $58,100. Plaintiff's attorneys were allowed a fee of $5,810. It was held the allowance was excessive and the amount was reduced to $1500. In Sandrowski v. Sandrowski, 230 Mo.App. 1056, 93 S.W.2d 81, the property brought $2,050 at the sale, and plaintiff's attorney was allowed a fee of $100.

■ After considering the testimony, and taking into account all the factors relevant on the issue to be determined, we are of the opinion that $12,000 would be a rea-

sonable allowance to plaintiff's counsel for the services rendered for the common benefit of all the parties.

■ We are also of the opinion that the $10,000 fee allowed to the Special Commissioner is excessive. At the conclusion of the hearing the Court, in speaking of the Commissioner's fee, said:

"Now, the Commissioner's fee, based on five per cent would be about $8,900.-00, * * .* I am going to allow the Commissioner $1,000 extra fee, in addition to that, in view of the extra work the Commissioner had to do, to go down to Wright County and St. Louis County, and send out special notices, etc., so I am going to allow him an extra $1,000 in addition to the regular five per cent * * *."

The record discloses that the Special Commissioner did perform more work in connection with the sales than would be expected of a sheriff acting under the statutes, Secs. 528.340, 528.370, and 528.400. The record discloses that the Special Commissioner interviewed people across the street from each piece of property, sent out 2400 circulars, contacted persons who might be interested in the properties, attempted to interest tenants in the partition sale, placed signs on the properties advertising the sales, made special efforts to sell the property located in St. Louis County and the property located in Wright County, interested a bidder into offering $4,750 more in bulk than the aggregate of the individual bids for the St. Louis properties, and generally attempted to stimulate bidding at the sales.

■ For the extra service the Special Commissioner should receive a fee in excess of that provided a sheriff by Section 528.610 RSMo 1949, V.A.M.S. But we cannot approve a commission based upon the usual real estate broker's commission of five per cent, plus an extra sum for the additional work. The additional work done was no more than should be reasonably expected from one who expects to be paid a fee in excess of that allowed to

the sheriff for making a sale. Otherwise, there would be no point in seeking the service of a special commissioner. Furthermore, a basic fee of five per cent of the sale price is too high, considering the fact that in a case such as here the Special Commissioner does not assume the risk of "no sale," and is free of all expense incurred.

In our opinion, a fee of $6,500 would adequately compensate the Special Commissioner for his services in this case.

The judgment is reversed and the cause is remanded with directions to enter a new judgment in conformity with the views herein expressed.

RUDDY and MATTHES, JJ., concur.