GEORGE A. S. ROBERTSON, Superintendent of the Insurance Department of the State, v. MANUFACTURING LUMBERMEN'S UNDERWRITERS, a Reciprocal Exchange, ET AL., Defendants, I. J. RINGOLSKY, WM. G. BOATRIGHT and HARRY L. JACOBS, Appellants.— 145 S. W. (2d) 134.

Division Two, December 3, 1940.

1104

*James P. Aylward, George V. Aylward* and *Terence M. O'Brien* for appellant; *Wm. G. Boatright* of counsel.

*Clark, Boggs, Peterson & Becker, Howard B. Lang, Jr.,* and *William L. Nelson, Jr.,* for respondent.

1106

WESTHUES, C.—This is an appeal from an order of the Circuit Court of Jackson County, Missouri, allowed appellants attorneys' fees in the sum of $3,500. The attorneys contended that the allowance was grossly inadequate and appealed. The history of the case leading to this controversy, as stated in appellants' brief, which we quote, omitting parts deemed unnecessary, is as follows:

". . . The respondent was the Superintendent of Insurance of the State of Missouri, having succeeded R. E. O'Malley to that office, the services in question being rendered during the tenure of O'Malley. The defendant, Manufacturing Lumbermen's Underwriters, was a reciprocal exchange doing business in the State of Missouri under the provisions of Secs. 5966 to 5977, R. S. Mo. 1929, governing reciprocals, and also doing business in numerous other states and in Canada. Rankin-Benedict Underwriting Company, which will be mentioned hereinafter, is a Missouri corporation and was the attorney-in-fact of said reciprocal until superseded by one Vincent Coates. Howell & Jacobs, Kansas City lawyers, represented Coates, the substituted attorney-in-fact of said reciprocal and also certain subscribers or 'members' thereof.

"R. E. O'Malley, the then Superintendent of Insurance, on November 12, 1936, filed a petition in the Circuit Court of Jackson County, Missouri, for an order to place him in charge of the property of Manufacturing Lumbermen's Underwriters, a reciprocal inter-insurance exchange, as agent and for such further transaction of business by said exchange would be hazardous to policyholders. This proceeding was authorized under the insurance liquidation and rehabilitation statutes of Missouri. [Secs. 5939 to 5959, incl., R. S. Mo. 1929, as Amended; Laws of Missouri, Extra Session, 1933-34, p. 65.] On the same day the circuit court entered an order authorizing the Superintendent forthwith to take charge of the exchange's property, enjoining it from further prosecution of its business. Pursuant to this order the Superintendent took charge of the reciprocal's assets consisting of cash, bonds, stock and accounts receivable in excess of two and one-fourth million dollars ($2,254,047.50), composed of the following items: cash, $313,542.77; bonds, $1,444,031.82; bank stock,

$1,020; bank liquidation certificate, $2,902.30; deposits and accounts, $455,430.14. The liabilities for losses due from reinsurers was $37,119.65.

"While the Superintendent was in charge of the exchange and its assets under said order and before trial and hearing on the merits of the Superintendent's petition, and while the Circuit Court of Jackson County, Missouri, was exercising jurisdiction over the exchange and its vast properties, on December 1, 1936, a petition was filed in the United States District Court at Kansas City, Missouri, seeking to have Manufacturing Lumbermen's Underwriters adjudicated a bankrupt, and to have its assets removed to and liquidated in the bankruptcy court, thus ousting the Superintendent and the State Circuit Court. This proceeding purported to be a petition of said exchange for a voluntary adjudication of bankruptcy, and to be filed for the exchange of aforementioned Rankin-Benedict Underwriting Company, claiming to act as the exchange's attorney-in-fact. An order and judgment adjudicating said exchange a bankrupt was immediately entered *ex parte* in the federal court and on the following day the referee in bankruptcy appointed a receiver for all of the exchange's assets, said receiver being one of the attorney-in-fact's officers. The situation on December 2, then, was that a federal court and a state court were each claiming jurisdiction over the exchange and its assets, and a federal court receiver and a statutory agent appointed by a state court had each been ordered to take charge of the assets. . . .

". . . The Superintendent at the time was represented in the state court proceeding by James P. Aylward, George V. Aylward and Terence M. O'Brien, hereinafter referred to as the Aylward firm. Upon their recommendation, the Superintendent authorized the employment of appellants, Ringolsky, Boatright & Jacobs, for the special purpose of resisting the bankruptcy proceedings and enforcing and vindicating the Superintendent's right to the custody and control of the exchange and its assets. . . . There was no arrangement or agreement between appellants and the Superintendent as to the compensation appellants were to receive."

Appellants and the Aylward firm represented the Insurance Department in the Federal court in the bankruptcy matter. They contended that the alleged bankrupt company was not amenable to voluntary bankruptcy. A motion was filed to dismiss the proceedings and this motion was sustained. [See In re Manufacturing Lumbermen's Underwriters, 18 Fed. Supp. 114.] On February 27, 1937, an involuntary petition in bankruptcy was filed in the United States Court against the defendant company. The Aylward firm and appellants again represented the Insurance Department. They asked the Federal court, in a motion filed, to dismiss the proceedings on the theory that defendant company was not subject to involuntary

bankruptcy. This motion was sustained and an appeal was taken to the Circuit Court of Appeals. While the appeal was pending there was a change in the personnel of the Superintendent of Insurance and he employed other attorneys to represent the Insurance Department. A compromise was effected with the petitioning creditors and the appeal was dismissed. Thus ended the controversy in the Federal court. The Aylward firm and appellants filed a joint application in the circuit court for the purpose of having the court allow their compensation for the legal services performed in the bankruptcy litigation.· The trial court heard evidence in support of this motion. Appellants introduced evidence as to the value of the services. A number of reputable lawyers, who had practised law in Kansas City for many years, testified that the services rendered in the Federal court by the Aylward firm and appellants were reasonably worth $50,000. The trial court did not make an allowance to the Aylward firm, stating that their compensation for ·services performed in the Federal court could be allowed when the court fixed their compensation for services rendered to the Insurance Department in the case pending in the circuit court.

At the outset we are confronted with a motion to dismiss this appeal, the theory of respondent being that the insurance code of the State is an exclusive code unto itself and does not authorize an appeal for a judgment or order allowing fees to attorneys. This is a new question and seems not to have ·been presented before. The Insurance Department appealed from such a judgment in the case of O'Malley v. Continental Life Insurance Company, 343 Mo. 410, 121 S. W. (2d) 850. The trial court had allowed a fee of $5,000. The attorneys had asked for $25,000. The Insurance Department appealed from the judgment and asked a reversal thereof on the theory that the attorneys were not entitled to any fee. The attorneys in the case also appealed. The court sustained the contention of the Insurance Department and reversed the judgment.

Another case where the Insurance Department appealed from a similar judgment was Robertson v. Missouri State Life Insurance Company, 136 S. W. (2d) 362, where the St. Louis Court of Appeals reversed the judgment of the lower court. Respondent refers us to Section 5945, R. S. 1929, as amended by Laws of 1933-34, Ex. Sess., page 67. This section allows an appeal to either the Insurance Department or a defendant company within five days after a court has entered a judgment on a petition of the Insurance Department seeking the liquidation of a company. It is contended that this section does not authorize any other appeal. This section, however, is not a limitation on the right of appeal, but grants the right to either the Insurance Department or a defendant company in a ·case where the right of appeal absent the statute would be uncertain. [O'Malley v. Continental Life Insurance Company, 335 Mo. 1115, 75 S. W.

(2d) 837.] In that case this court en banc ruled that "appeals are favored in law and statutes granting appeals are liberally construed."

Section 1018, R. S. 1929, Mo. Stat. Ann., p. 1286, provides: "Any party to a suit aggrieved by any judgment of any circuit court in any civil cause from which an appeal is not prohibited by the Constitution, may take his appeal to a court having appellate jurisdiction," etc. Section 5944, R. S. 1929, Mo. Stat. Ann., p. 4532, of the insurance code, prescribing proceedings under the code, contains the following provision: "The pleadings and proceedings, in so far as not otherwise regulated by this chapter, shall be as in other civil causes." That provision was quoted in Moss v. Kansas City Life Insurance Company, 96 Fed. (2d) 108, l. c. 113, and the court held that motions for new trial and in arrest were pursuant to that provision governed by the civil code.

The insurance code has been on our statute books for many years. The right of appeal has been exercised by the Insurance Department as well as by litigants deeming themselves aggrieved by any judgment in favor of the department. The Legislature has not, in view of this interpretation of the law, seen fit to expressly prohibit appeals. This continued acquiescence in that interpretation by the Insurance Department and also the State Legislature implies that the law has been correctly interpreted. We rule, therefore, that the right of appeal exists in cases of this nature and the motion to dismiss will be overruled.

█ Respondents assert that the question of attorneys' fees is not triable *de novo* by this court. A number of cases are cited, as well as Section 5954, Laws 1933-34, Ex. Sess., page 70. That section authorizes the Superintendent of Insurance to employ legal counsel and a clerical force subject to the approval of the court as to the amount of compensation to be paid them. That section does not mention or even suggest what is to be done by an appellate court in case of an appeal from the allowance or disallowance of compensation for legal services. Neither do the cases cited by respondent rule the question. [State ex rel. v. Hall, 330 Mo. 1107, 52 S. W. (2d) 174; State ex rel. v. Mulloy, 330 Mo. 951, 52 S. W. (2d) 469.] Those cases ruled that a circuit court did not have the power to appoint a receiver for an insurance company, the remedy provided by the insurance code being exclusive. This court, at the instance of the Superintendent of Insurance, issued a writ of prohibition restraining the circuit court from proceeding further in a receivership suit. It is evident that those cases do not rule the question now under consideration.

The case of Aetna Insurance Company v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164, is not applicable. That case presented the question of whether attorneys, representing the State in an insurance rate controversy, could be paid out of the funds collected by the

insurance companies pending the litigation, which funds had been ordered returned to the policyholders. In the case of Robertson v. Missouri State Life Insurance Company, 136 S. W. (2d) 362, the court ruled that attorneys who had not been employed by the Insurance Department were not entitled to be paid a fee out of the assets of a company in liquidation. The case is not in point here.

Many cases may be found where appellate courts, on appeals from the allowance of attorneys' fees, have considered the case *de novo* and either increased or decreased compensation allowed by the lower courts. [See notes in 7 C. J. S., pages 1088, 1089.] At page 1093, section 191-d, 7 C. J. S., we note the following: ''Where there is a controversy as to an attorney's fee, the determination of the amount thereof is within the discretionary power of the trial court, or on appeal, of the appellate court.'' There are three recent Federal cases on this subject. In the case of Merchants' & Manufacturers' Securities Co. v. Johnson, 69 Fed. (2d) 940, l. c. 945, [7, 8], a receivership suit, the appellate court fixed the attorney's fee. In Blackhurst v. Johnson, 72 Fed. (2d) 644, l. c. 648, 649, [15-18] [19], a suit to set aside a trust, the appellate court reduced an attorney's fee of $7,500, allowed by the trial court, to $3,500. In that case the court discussed at length the applicable rules governing allowance of attorneys' fees. In the third case, Davitt v. O'Connor, 73 Fed. (2d) 43, the appellate court likewise considered the question of attorneys' fees *de novo*. The insurance code authorizes the allowance of attorneys' fees, but there is nothing in the code which changes the rules usually followed by courts in allowing such fees. We, therefore, rule that the trial court in the first instance has the power to determine the amount of compensation to be allowed and on appeal the question may be considered *de novo*.

Respondent cites the case of Blackhurst v. Johnson, 72 Fed. (2d) 644, supra, as authority that the allowance made by the trial court in this case was adequate. In the Blackhurst case the court quoted from cases of the United States Supreme Court and the question of allowing attorneys' fees was given serious consideration. [See Blackhurst v. Johnson, 72 Fed. (2d) 644, l. c. 648, 649.] The court emphasized that '' 'The rights of those who ultimately pay must be carefully protected,' '' and '' '. . . judges of the courts in fixing allowances for services to court officers, should be most careful, and that vicarious generosity in such a matter could receive no countenance.' '' The court in that case also said:

''In determining the question of the reasonableness of the attorney fees, many elements are entitled to consideration—the character, ability, and experience of the attorneys, the amount involved, the time necessary to prepare for trial, the difficulties and intricacies of the propositions involved, and the results obtained, as well as other elements.''

In the case before us, as in that case, the facts are not in dispute. Now to the question of whether the allowance made by the trial court was grossly inadequate. Our answer to that question must be in the affirmative. The importance of the points of law with which appellants have to deal is reflected in the opinion of Judge OTIS, reported in 18 Fed. Supp. 114, sustaining the motion to dismiss. The opinion covers pages 115 to 125, inclusive, of the Federal report. The syllabus is divided into ten separate topics. For brevity's sake we refer the reader to that opinion and will set forth here only a few of the important features to be considered. The defendant company transacted business in thirty-six states. Its assets amounted to over $2,000,000. There were about 40,000 claims against the company. This fact is important only to show the volume of business transacted. The attorneys were required to acquaint themselves thoroughly with the manner in which the company transacted its business in the various states. This was necessary in order that they might present to the court in an intelligent manner the question of whether the company came within the provisions of the bankruptcy act. The points of law were novel, difficult and new. The undisputed evidence disclosed that one member of the firm devoted all of his time for a number of weeks to this matter. He worked all day and a number of hours at night, as well as on Sundays. Another member of the firm and two assistants in the office also devoted practically all of two weeks to this litigation.

Then came the second bankruptcy case wherein a number of creditors attempted to have the company adjudged an involuntary bankrupt. That case was presented to the Honorable Judge REEVES. Appellants again were required to do a great deal of research work because the question was presented to the Federal court from an entirely different angle. Able and skilled counsel represented parties adverse to the Insurance Department. It is conceded that appellants are lawyers of high standing. They were employed especially for this case because of their ability to handle this kind of litigation. There is evidence that the overhead expense of appellants' firm amounted to over $1,000 per month. The opinion of Judge OTIS and the briefs filed by appellants in that case disclose that appellants presented the matter to the Federal court in a careful, skillful and thorough manner. The questions of law required the services of industrious lawyers of high standing and skill. The evidence in the record on the value of services, as given by a number of able lawyers, was $50,000 for both the Aylward firm and the appellants. In that sum was included the labor of prosecuting the case to final determination in the Circuit Court of Appeals. That would mean that the value of the services of appellants was placed at about $25,000, for the record justifies the assertion that they performed at least one-half of the labor. The rule is, that evidence of lawyers as to the value

of legal services is not binding on the courts. Blackhurst v. Johnson, 72 Fed. (2d) 644, l. c. 648 [15-18], where the court said: "A judge of a trial or appellate court is himself an expert as to what are reasonable attorney fees." However, such evidence is advisory and helpful. Considering all these matters and the result attained, and also keeping in mind that the allowance must be paid out of the assets of the company in liquidation, we say that $3,500 was grossly inadequate. That amount would be little more than enough to pay the overhead expense of appellants' firm for the time that was devoted to these cases. We deem a fee of $15,000 modest and fix the allowance at that figure, to be paid to appellants in this case, that is, I. J. Ringolsky, William G. Boatright and Harry L. Jacobs.

The judgment of the trial court is, therefore, reversed, with directions to enter an order and judgment in favor of the appellants named in the sum of $15,000, which is to be paid out of the assets of the company is liquidation. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.