EDWARD L. SCHEUFLER, Superintendent of the Insurance Department of the State of Missouri, Respondent, v. CONTINENTAL LIFE INSURANCE COMPANY, a Corporation, Defendant, KANSAS CITY LIFE INSURANCE COMPANY, a Corporation, Respondent, FRANK P. ASCHEMEYER (Intervening Petitioner), Appellant.—No. 38118. —169 S. W. (2d) 359.

Division Two, January 4, 1943.

Motions for Rehearing and Modification Denied, March 25, 1943.

*Powell B. McHaney* for appellant.

888

_Lawrence Presley_ and _Preston Estep_ for Edward L. Scheufler, State Superintendent of Insurance, respondent.

BARRETT, C.—Frank P. Aschemeyer, general counsel for the various superintendents of the Insurance Department of the State of Missouri in the proceedings involving the Continental Life Insurance Company, appeals from an order of the Circuit Court of the City of St. Louis allowing him an attorney's fee of $7,500.00, on the theory that the allowance was grossly inadequate and should have been for the sum requested, $17,000.00.

In January, 1934, Emmet O'Malley, then Superintendent of the Insurance Department of the State of Missouri, instituted proceedings against the Continental Life Insurance Company under the provisions of Article 10, Chapter 37, R. S. Mo. 1939, particularly Sections 6052-6070. After a trial the superintendent was ordered to take possession of the company, conduct its business and rehabilitate the company. Finally, under the court's direction, the business of the Continental Life Insurance Company was sold to and reinsured by the Kansas City Life Insurance Company. The final order approving the sale and terminating the orders to rehabilitate was entered on July 26, 1936. At that time the sum of $225,000.00 was withheld and set aside from the assets of the Continental Life Insurance Company for the purpose of paying the expenses of winding up the affairs of the company, including the fees of attorneys. This is indeed a most concise outline of a very complicated, hotly contested proceeding which involved several trials and appeals, but is all that is necessary as an introduction to the present controversy, which is merely an incident to and an intervening petition in the principal case.

The appellant was attorney for the Superintendent of Insurance from the time the proceedings were instituted in January, 1934, until the filing of the instant petition on March 19, 1941. His present application is for services rendered by him from December 3, 1936, to the date of his petition. Prior to December 3, 1936, other counsel were also employed as attorneys, together with Mr. Aschemeyer, to represent the department and the insurance company. As a result there were two prior applications and allowances for attorneys' fees in which he participated. The first allowance of $35,000.00 was for services up to May 25, 1934. Mr. Aschemeyer said that was a joint

allowance to Judge Ridge, Mr. Aylward, Mr. Waechter and himself. His share in that allowance was $4500.00. Subsequently an allowance of $100,000.00 was made for services rendered ▪ during the period from May 25, 1934, to December 3, 1936. That allowance was to Mr. Waechter, Judge Ridge, Mr. Goodman, Mr. Aylward and the men in his office, as well as Mr. Aschemeyer. Mr. Aschemeyer's share in that allowance was $20,000.00.

Mr. Aschemeyer's petition and his uncontradicted evidence shows that from December 3, 1936, to March 19, 1941, he performed the following services which we briefly summarize:

After the Continental Life Insurance Company was ordered sold to the Kansas City Life Insurance Company he examined and approved for execution by the Superintendent of Insurance all deeds, assignments, indorsements and other instruments necessary to convey the title of all the property from one company to the other. He examined and approved deeds conveying about 450 pieces of real estate. There were hundreds of assignments of mortgages and deeds of trust as well as notes. These, of course, were prepared by the Kansas City Life Insurance Company but passed on by the appellant.

He endorsed all checks payable to the superintendent to the Kansas City Life.

There was about $50,000.00 in claims by general creditors and these were settled for about fifty cents on the dollar. There were thirty-five smaller claims for debts incurred by the original custodian without a court order and after some difficulty these were paid in full.

In 1936 a suit by certain policyholders was instituted in the United States District Court for the Eastern District of Missouri to set aside the contract of sale and reinsurance to the Kansas City Life. Mr. Aschemeyer filed a motion to quash the summons and his motion was sustained both by the District Court and on appeal by the United States Circuit Court of Appeals. Moss v. Kansas City Life Ins. Co., 96 Fed. (2d) 108.

He assisted in the preparation of income tax returns for the 1936 tax year.

In December, 1936, Mr. Mays, as a stockholder, filed a motion for a new trial with respect to the orders of July 25, 1936, ordering the sale and reinsurance of the Continental. There was a disagreement as to the bill of exceptions and Mr. Aschemeyer prepared and filed objections to the one presented and was sustained in his contentions. Subsequently he filed a motion in the Supreme Court to dismiss the appeal and a brief in support of the motion and the case was dismissed.

There were several contested claims which he handled and settled for about twenty-five per cent of the sums claimed. In one of these Elcie Clouse claimed damages for breach of contract in that the

Continental Life had agreed to make her a loan of $150,000.00 and in reliance on their promise she delivered deeds of trust on her property to Continental Life which they subsequently foreclosed. That claim was settled for $4000.00, the consideration being paid by Kansas City Life because it had the title to her property.

An attorney had a claim for fees and that was settled for $750.00.

Lola L. Adams had a compensation claim against the company, pending before the South Dakota Compensation Commission. The claim was for the death of her husband, a company employee, in an automobile accident. . Mr. Aschemeyer briefed the question of jurisdiction but the claim was finally settled by the compensation insurance carrier.

He prepared and filed the settlements of both Mr. O'Malley and Mr. Robertson as to the administration of the $225,000.00 fund. Certain stockholders and policyholders filed intervening petitions claiming the balance of this fund and he appeared in the Circuit Court in connection with those matters, filing a brief and arguing the department's position.

In addition, Mr. Aschemeyer had many conferences with the department and was consulted as to its rights under the reinsurance contract. His correspondence was voluminous. He made twenty-two trips to Jefferson City in connection with his employment. He estimates that he actually devoted 400 days of the time in question to the department and the company.

We have not detailed every item testified to but believe this sufficient for the issues presented.

He stated that at the request of Judge Lucas, then Superintendent of Insurance, he conferred with him, Judge Henson, the department's attorney, and General McAllister, representing Kansas City Life, with reference to his compensation. He thought he should have $22,500.00 for the period in question and after some discussion of the matter with them they came to an understanding that $17,000.00 was reasonable and proper and for that reason his application asked for that specific sum.

Judge Henson, Judge Lucas and General McAllister all agreed that Mr. Aschemeyer should be paid the sum of $17,000.00 for the specified services. Judge Hoffmeister and Mr. James C. Jones, Jr., expressed their opinions that he was reasonably entitled to from $20,000.00 to $25,000.00 for the services detailed by him.

At the conclusion of the hearing the trial court entered an order allowing the appellant $7500.00 for his "final allowance" and "in full" payment of his services. The appellant has set forth in his motion for a new trial the trial court's "off the record" reason for the allowance made: "I felt that you should not receive more than $32,-000.00 for your services from beginning to end of this case, where general creditors received 50% on their claims and a lien was im-

posed on policyholders. Since you had previously received $24,500.00 I allowed you the difference, or $7500.00.'.'

The appellant's position is that the trial court's allowance, on the undisputed facts, is so grossly inadequate as to amount to an abuse of discretion and that this court will try the matter anew and fix a proper fee. His theory is that the trial court's views are not entitled to any deference by this court because (1) the evidence as to the nature and extent of the appellant's services is undisputed, (2) the court considered irrelevant and immaterial circumstances, such as the amount paid on general claims of creditors .and the lien imposed on nonregistered policyholders and (3) the court failed to limit itself to the value of legal services rendered between December 3, 1936, and March 19, 1941, and in so doing went outside the issues made by appellant's application and the evidence.

In trying the case de novo the appellant indicates that this court, as well as the trial court, is confined to the issues made by his petition and to the period of time specified by his pleading and his evidence. In fixing his fee he says we should consider the following factors: The nature and extent of the services rendered, the importance of the matters involved to policyholders, the Superintendent of Insurance and others, the value of the property and assets affected, the responsibility imposed on the appellant, the degree of professional skill and experience required, the amount of time devoted by the appellant, the favorable results attained, the opinion evidence of lawyers as to the value of his services, the recommendations of Judge Lucas, Judge Henson and General McAllister and the fact that by reason of the agreement or understanding between himself, the Department of Insurance and other counsel he had waived his right to ask an allowance in excess of $17,000.00.

The respondent's position is that Mr. Aschemeyer's services as general attorney being at an end it was proper for the trial court to consider his services as a whole and fix his compensation accordingly, and not piecemeal, and that the court's allowance of a sum, on the final and last hearing, which together with previous allowances approved a total fee of $32,000.00 was not an abuse of discretion. In this connection, as we interpret the respondent's argument, it says the trial court did consider the appellant's services as a whole by (1) taking judicial notice of all the records and proceedings in this cause, including the prior applications and allowances for attorneys' fees and (2) considering Mr. Aschemeyer's testimony as to the prior allowances and their division, together with his evidence as to his services since the last application.

There is and can be no dispute but that "an attorney is entitled to fees which are fair and just and will adequately compensate him for his services" and that in the absence of an agreement his fee is measured by the reasonable value of his services. 7 C. J. S., Sec.

191, p. 1079. Furthermore, any court required to pass on the reasonableness of an attorney's fee and fix his just compensation should take into consideration all the elements suggested by the appellant and any other fact or circumstance which would aid the court in reaching a conclusion just to the lawyer and his client. 7 C. J. S., Sec. 191, pp. 1079-1094; Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 145 S. W. (2d) 134; Lucas v. Manufacturing Lumbermen's Underwriters; Aylward et al., Intervenors, No. 37666, 166 S. W. (2d) 537; Blackhurst v. Johnson, 72 Fed. (2d) 644; Bowersock Mills & Power Co. v. Joyce, 101 Fed. (2d) 1000; Federal Oil Marketing Corp. v. Cravens, 46 Fed. (2d) 938; Walton N. Moore Dry Goods Co. v. Lieurance, 38 Fed. (2d) 186. However, the court is not conclusively bound by the opinion evidence of other lawyers, nor by the understanding or even agreement between the appellant, the Department of Insurance and counsel representing the department, ▮▮▮ even though they may be entitled to great weight. Robertson v. Manufacturing Lumbermen's Underwriters, supra; Lucas v. Manufacturing Lumbermen's Underwriters, supra. Neither may the court, either appellate or trial, arbitrarily ignore the undisputed evidence. 7 C. J. S., Sec. 191d; Robertson v. Manufacturing Lumbermen's Underwriters, supra.

▮▮ ▮▮ The final responsibility in fixing a fee, however, is on the court; first, on the trial court and second, on the appellate court, where the cause is tried de novo, if the appellate court can reasonably and justly do so. Sec. 6065, R. S. Mo. 1939; Robertson v. Manufacturing Lumbermen's Underwriters, supra; Lucas v. Manufacturing Lumbermen's Underwriters, supra. Section 6065 in speaking of the superintendent's duties in proceedings to enjoin, rehabilitate, dissolve, wind up or otherwise settle the affairs and dispose of the assets of an insurance company says: "He shall have power and authority, however, in such cases, and *through the course of the whole case, to employ the necessary legal counsel* and assistance, and clerical and actuarial force, *subject to the approval of the court as to the amount of compensation to be paid* them, . . . "

While, under these statutes, "the superintendent is not a mere receiver under court orders" (Lucas v. Manufacturing Lumbermen's Underwriters, 349 Mo. 835, 163 S. W. (2d) 750, 757; O'Malley v. Continental Life Ins. Co., 343 Mo. 382, 121 S. W. (2d) 834), the superintendent and his counsel, at least in so far as fees and expenses are concerned, are "subject to the approval of the court as to the amount of compensation." And, in that respect, their relationship to the cause is analogous to that of a receiver, his attorney and the court and for that reason counsel fees should not and cannot be conclusively allowed piecemeal but at the conclusion of the whole proceeding everything done in the whole cause should be considered and a final allowance made, which, in view of the whole cause and prior

894

allowances on account for services rendered, justly compensates the lawyer and yet fairly considers the litigant. 1 Clark, Receivers, Sec. 642, p. 897; Bowersock Mills & Power Co. v. Joyce, supra; Federal Oil Marketing Corp. v. Cravens, supra; Trustees Corporation v. Kansas City, M. & O. Ry. Co.; 26 Fed. (2d) 876; Drilling & Exploration Corp. v. Webster, 69 Fed. (2d) 416.

That is exactly what was done in Robertson v. Manufacturing Lumbermen's Underwriters and Lucas v. Manufacturing Lumbermen's Underwriters, as well as in Greeley v. The Provident Savings Bank, 103 Mo. 212, 15 S. W. 429, and the Federal cases supra. There is this difference, however, in the Robertson case, there had been no prior allowances on account and the question was as to the total reasonable fee to be allowed, under all the circumstances of the whole case. In the Lucas case there had been a prior allowance to certain counsel (Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 145 S. W. (2d) 134) and on the final application other counsel divided their claim for fees into three items: $15,000.00 for two bankruptcy proceedings, $20,000.00 for general work in connection with the company and $10,000.00 for representing the superintendent in an accounting. The trial court ordered an allowance of $20,000.00 for all services rendered. This court held that the attorneys' fees could not be fixed piecemeal but that they should be compensated on the basis that their services were rendered as general attorneys "in all matters pertaining" to the company and a total allowance of $35,000.00 was made for all their services. But, it should be noted that in this case not only was there the oral evidence of the lawyers as to the services they had performed but all the records and proceedings in the whole case were in evidence before both the trial court and this court and the case could readily be tried de novo.

The respondent claims that the trial court, in the instant case, did consider the whole cause and all the proceedings in it and made a final allowance which, in view of prior allowances on account, was reasonable and proper, considering the services rendered by the appellant throughout the cause. Its contention is that Mr. Aschemeyer testified to the prior allowances and this fact in connection with the trial court's taking judicial notice of all the proceedings in the cause which were before the court was a consideration of the reasonableness of his fees for the whole cause. The appellant says that the court could not go beyond the value of his services between the dates of December 3, 1936, and March 19, 1941; that the prior joint allowances were conclusive final ▉▉▉ judgments and not subject to review by the trial court. We cannot wholly agree to either of these positions.

As we have indicated, at the conclusion of all his services a final fee should be allowed. At that time his services since the last allowance on account should be considered and he should be compensated for those services and for all his services, taking into consideration

the prior allowances on account and the nature and extent of the services rendered by him throughout all the proceedings. The prior allowances on account may be conclusive for some purposes (53 C. J., Sec. 614, p. 379) but in a proceeding of this character they are not such final judgments as preclude the trial court, with the responsibility of passing on the fees for the whole proceeding, from considering the appellant's services in connection with the whole administration of the cause and finally allowing him a just and proper fee under all the circumstances. People v. Brooklyn Bank, 118 N. Y. S. 722, 734-735.

While the court before which the whole proceeding is pending may take judicial notice of the records and pleadings in the cause, including proceedings ancillary to the main cause, such as intervening petitions or applications for attorneys' fees (31 C. J. S., Sec. 50b, p. 622; 9 Wigmore, Evidence, Sec. 2579; 1 Jones, Evidence in Civil Cases, Sec. 124), yet we do not believe that to be a sufficient answer to the present problem and certainly not so far as this court is concerned in attempting to try the case de novo.

Judicial notice, that is, a fact "safely assumed to be within the knowledge of the court" dispenses with the necessity of establishing that fact by evidence. 1 Jones, Evidence in Civil Cases, Sec. 105; 9 Wigmore, Evidence, Sec. 2565. The doctrine of judicial notice originated in the maxim that "what is known need not be proved" qualified by the further maxim or principle that "it matters not what is known to the judge, if it is not known to him judicially." Thayer, Preliminary Treatise on Evidence, p. 277.

So it is here, certainly this court cannot know judicially what transpired in this cause throughout its long history and there being but little evidence in the record as to what was done we cannot try the cause de novo. 4 C. J. S., Sec. 1212. As to the trial court, there seems to us to be two insuperable objections to this contention or method if it was used. In the first place it does not appear from the record that the trial court did in fact take judicial notice of all the prior proceedings in the cause and determine the matter of fees on that basis. In the second place, assuming that the court had before it, by way of judicial notice, the prior applications for fees and Mr. Aschemeyer's testimony as to his share in the fees previously allowed, yet we do not believe that the court had sufficient information or competent evidence before it to determine what a reasonable fee for all the proceedings should have been. From the prior applications and orders the court might judicially know the amounts of the prior allowances and even the nature and extent of the services for which fees were claimed, if such matters were fully set forth in the applications, and yet the court could not have considered the whole cause and the appellant's services throughout and allowed him a fee on that basis. In any event Mr. Aschemeyer would be entitled to know upon

896

what basis the court was proceeding and be heard accordingly. "Taking judicial notice does not import that the matter is indisputable. It is not necessarily anything more than a prima facie recognition, leaving the matter still open to controversy. It is true, as regards many of the things which are judicially noticed, that they cannot well be supposed to admit of question, . . . but the doctrine covers much else." Thayer, Preliminary Treatise on Evidence, p. 308.

The judge of the court making the final allowance was not the same judge who had presided throughout these proceedings. He had not passed on the prior applications for fees and his actual knowledge of the proceedings and of the value of Mr. Aschemeyer's services was for a limited time, only, and that fact would cast some doubt on what he could, did or should judicially know or notice. 9 Wigmore, Evidence, Sec. 2579, pp. 569-570. Certainly, since it does not appear from the record, we cannot say what he judicially noticed. 4 C. J. S., Sec. 1212.

If all prior proceedings had been in or before this court so that we had personal knowledge of all that had been done we might have judicial notice of them and be able to try the case anew and fix a fee accordingly, as was done in Culhane v. Foley, 305 Mass. 542, 26 N. E. (2d) 331 and ▮▮▮▮ Lewis v. Wilkinson, 237 Ala. 197, 186 So. 150. If the sole and only issue in the case were the value of Mr. Aschemeyer's services between December 3, 1936 and March 19, 1941, we could try the case de novo and fix a proper fee as we have done before. Robertson v. Manufacturing Lumbermen's Underwriters, supra; Lucas v. Manufacturing Lumbermen's Underwriters, supra. But, as we have indicated, that is not the issue in proceedings involving fees under the insurance code and it is our view that we cannot properly determine the matter under this record and that the trial court did not do so and the cause is, therefore, reversed and remanded for further proceedings in conformity with this opinion. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.