Charles J. McMULLIN, Plaintiff-Appellant,

v.

Camille KLEIN, Defendant-Respondent.

No. 8982.

Springfield Court of Appeals,
Missouri.

May 24, 1971.

Motion for Rehearing or for Transfer to the
Supreme Court Denied June 9, 1971.

Weber Gilmore, Gilmore & Gilmore, Sikeston, Charles J. McMullin, St. Louis, for plaintiff-appellant.

David E. Blanton, Blanton, Blanton & Rice, Sikeston, for defendant-respondent.

HOGAN, Judge.

Plaintiff, an attorney, filed this action in five counts to recover an attorney's fee and expenses from the defendant. In Count Three of his petition, plaintiff sought recovery on the ground that he had, through his professional exertions, created or preserved a fund in which the defendant had shared. On plaintiff's motion, the issues raised by Count Three were tried separately as provided by Rule 66.02, V.A.M.R., and judgment thereon was entered for the defendant. The plaintiff has appealed. Since trial was had to the court without the intervention of a jury, the cause is before us for review under the provisions of Rule 73.01(d), V.A. M.R.

Upon trial, the parties testified at length and introduced 32 exhibits of varying degrees of relevance and complexity, but in the view we take of this appeal, a brief synopsis of the factual background will suffice. Plaintiff's granduncle, Charles F. McMullin, died testate in January 1926, leaving an estate valued at $200,000. Mr. McMullin's estate consisted for the most part of real estate in Scott, Stoddard and New Madrid counties. In his will, Mr.

McMullin gave and devised his entire estate to his wife, Mattie McMullin, for and during her lifetime, with a power of sale and additionally a power of appointment at her death. Mr. McMullin also made specific bequests of $10,000 to each of his five sisters, and bequests of $5,000 each to two nephews, Leonard (plaintiff's father) and Marvin. In addition, a bequest of $10,000 was made to Lula Townsend, Mrs. Mattie McMullin's sister. All these legacies were made payable at the death of the life tenant, and it was provided that the heirs of any predeceased sister of the testator should take per stirpes the share to which the sister would have been entitled if living. This will was admitted to probate on January 8, 1926, and Mrs. Mattie McMullin was qualified as executrix.

The Charles F. McMullin estate was administered upon, apparently without objection from any of the legatees, from the time of his death in 1926 to the time of Mrs. McMullin's death in 1958. The estate appreciated in value from $200,000 to approximately $1,400,000 at the time of Mrs. McMullin's death. The day-to-day management of the estate seems to have been left to a Mr. James Kevil, who managed the estate under a power of attorney executed to him by Mrs. McMullin.

Mrs. McMullin died, as indicated, in November 1958. In 1954, Mrs. McMullin had executed a will purporting to exercise the power of appointment conferred upon her by her husband's will. This will, in substance: (1) devised 320 acres of land to Mr. Kevil, to be chosen by him from the lands belonging to Charles F. McMullin at his death; (2) bequeathed to Mr. Kevil all of the testatrix's interest in and to a patented hybrid corn process and formula, which was described; (3) gave Mr. Kevil the privilege of renting the facilities used in processing and marketing the hybrid corn at a nominal rental; (4) gave Mr. Kevil all the office furniture belonging to the Charles F. McMullin estate; (5) devised a specifically described parcel of real estate to Mr. Kevil; (6) bequeathed the sum of $1,000 each to two of testatrix's nephews; and (7) gave and devised the residue of Mrs. McMullin's estate, "including the estate of Charles F. McMullin," to testatrix's niece, one Martha Housley. Mr. Kevil was named executor. On October 30, 1958, shortly prior to her death, Mrs. McMullin executed a codicil to her will. In this codicil, Mrs. McMullin revoked her residuary devise and bequest to Mrs. Housley, and instead: (a) made a specific bequest of $1,500 to Mrs. Aileen Beal, who was described as "secretary to the McMullin Estate"; (b) made a specific bequest and devise to one Lyon M. Schroff; (c) devised additional real estate to Mr. Kevil; and (d) gave and devised the residue of her estate, "including the residuary estate of Chas. F. McMullin," in equal shares to Mrs. Housley and her brother, one Myron Townsend.

The record does not indicate how the probate of Mrs. McMullin's will came to the plaintiff's attention, but he went to the probate court, examined the will, and concluded that it was invalid. Plaintiff testified that he thereafter consulted with Mr. Charles F. McMullin's heirs, taking the position that Mrs. McMullin's will should be set aside, so the estate would go to Mr. McMullin's heirs by the law of descent and distribution. The plaintiff's grounds for believing Mrs. McMullin's will to be invalid appear to have been that it was presumptively void or fraudulent because Mr. Kevil stood in a position of fiduciary relationship to the testatrix. At any rate, plaintiff testified that he discussed his plans for a will contest with the defendant, and although she was reluctant to become a party, she suggested "names of people to see" and asked to be kept advised. The defendant denied that she ever countenanced any litigation or agreed to assist plaintiff in any manner. Defendant's testimony was that plaintiff asked her to become co-administrator of the (Charles F.) McMullin estate, and that she declined. The gist of her testimony was that she knew the Kevils well, that

she was offended by some of the remarks plaintiff made concerning Mrs. McMullin, and that she was "not interested" in a will contest.

Plaintiff's first move, so to speak, was to petition the probate court to remove Mr. Kevil as administrator de bonis non, cum testamento annexo, of the estate of Charles F. McMullin. Plaintiff's stated grounds for this action were that he believed there was a conflict of interest between Mr. Kevil's position as executor of Mrs. McMullin's estate and his position as administrator d. b. n., c. t. a., of the Charles F. McMullin estate. Plaintiff was opposed in this effort, and the assets of the Charles F. McMullin estate were transferred to Mrs. McMullin's estate. Plaintiff undertook to prevent this transfer; in his words, he "filed a multitude of motions," but the court decided against him and he appealed.

By April of 1959, plaintiff had completed his investigation of the circumstances surrounding the execution of Mrs. McMullin's will, or enough of it to convince him that a will contest might succeed, and he took the results of that investigation to a Mr. Harvey B. Cox, another attorney whose office is in St. Louis. Mr. Cox, testifying by deposition, characterized plaintiff's investigation as a "very thorough piece of work," although he could not say whether every one of the 110 "items of work and work product" which plaintiff submitted to him was necessary. Mr. Cox did say that on the basis of the material left with him by the plaintiff, he formed the opinion that there were grounds to contest the will. Plaintiff had prepared a petition for filing, which Mr. Cox testified he "modified somewhat," and the action to contest the will was begun in April 1959.

In June 1960, the parties to the will contest agreed upon a settlement. The settlement is involved, but as material here it provided that Mr. Kevil would forego his claims under Mrs. McMullin's will and would receive the sum of $100,000 in cash;

that the specific bequests made in both the McMullin wills would be paid; that that part of the personal property or the proceeds thereof listed in the inventory of Mrs. McMullin's estate remaining after payment of the specific bequests provided for would be paid one-half to Martha Housley and one-half to Myron Townsend; and further, that "subsequent to the payment of the Federal taxes, if any," and subsequent to the payment (of the sums just noted) to Mrs. Housley, Mr. Townsend, and Mr. Kevil, the balance of all property was to be divided, generally, by distribution of one-half to Mrs. Housley and Mr. Townsend, the remaining half to be distributed among the heirs of Charles F. McMullin, except that special provisions were made for three of Charles F. McMullin's nieces, none of whom had joined as plaintiffs in the will contest action. These special provisions were that Mayme Marshall and Nina Mayfield (daughters of Mr. Charles F. McMullin's sister Mollie) were each to receive $\frac{1}{60}$ of the estate remaining as above, and that defendant (daughter of Mr. McMullin's sister Margaret) was to receive $\frac{1}{24}$. The settlement provided that the parties' "taking the said benefits is subject to their being bound by the terms, conditions and provisions of this Settlement Agreement," and further provided that if any of the three should renounce the benefits conferred by the settlement, then the share they would have received would go to Mr. Townsend and Mrs. Housley. Defendant has realized, as we calculate it, the sum of $27,083.33, in addition to the specific bequest of $5,000 she took as representative of her mother under Charles F. McMullin's will. Also, the final settlement filed in the estate of Mattie McMullin indicates that Miss Klein is entitled to another distribution of $6,339.99, which the parties say is being held "in escrow" pending the outcome of this litigation. This, in briefest sketch, is the factual background of the appeal.

■ As is quite often the case, some preliminary observations seem appropriate.

This appeal represents but one aspect of a complex and prolonged transaction involving a large amount of money. The testimony and the exhibits reflect many facets of the controversy; in point of fact, the case was presented in so much detail that the essential meritorious issues were somewhat obscured. We shall not lengthen this opinion by reciting or discussing record minutiae, or by discoursing at length on all the law involved and briefed by counsel. It is true, as the defendant argues, that deference is due the judgment of the trial court, but as we have noted elsewhere, the rule of deference is not a matter of constitutional or statutory inhibition, Venie v. South Central Enterprises, Inc., Mo.App., 401 S.W.2d 495, 498 [1], and if we are satisfied that the trial court's finding should have been otherwise, we are not bound by it. In re Petersen's Estate, Mo., 295 S.W.2d 144, 148 [3]; Cross v. Gimlin, Mo., 256 S.W.2d 812–813 [2, 3]. Moreover, the rule under which the plaintiff seeks recovery is different and distinguishable from the rule applied in State ex rel. Massman Const. Co. v. Buzard, 346 Mo. 1162, 1169, 145 S.W.2d 355, 357–358 [1, 2], and Tomasso v. Sorbets, Mo.App., 147 S.W.2d 151, 152 [1, 2], cited by the defendant. In those cases, the attorney sought to recover on the theory of an implied contract of employment. The principle under which the plaintiff seeks recovery here is an equitable principle, founded upon or derived from the power of equity courts to allow attorney's fees as part of the costs of an action. Sprague v. Ticonic National Bank, 307 U.S. 161, 164, 59 S.Ct. 777, 83 L.Ed. 1184, 1186. Generally stated, this rule is that when one goes into court and takes the risk of litigation upon himself, and successfully creates, protects or preserves a fund, or brings about the creation, increase or protection of a fund in which others are entitled to share, those others will not be allowed to lie back and share the results of the successful labors without contributing their proportionate part of counsel fees. See German Evangelical St. Marcus Congregation v. Archambault, Mo., 404 S.W.2d 705, 708–710; Jesser v. Mayfair Hotel, Inc., Mo., 360 S.W.2d 652, 661 [6]; Leggett v. Missouri State Life Insurance Company, Mo., 342 S.W.2d 833, 936 [60].[1] Ordinarily, the allowance of fees is made by deduction from a fund in court, but the existence of such a fund is not essential; the allowance may also be made by requiring proportional contribution from those who accept the benefit of the complainant's efforts.[2] Further, the award of attorney's fees may be made upon the direct petition or application of counsel, rather than the party entitled to the allowance. Lea v. Paterson Sav. Inst., 5 Cir., 142 F.2d 932, 934 [3]; O'Hara v. Oakland County, 6 Cir., 136 F.2d 152, 155 [2]; Anno., supra, 8 L.Ed.2d at 908. The person seeking the allowance need not profess to be the representative of other persons, but he must have an interest in common with them and the litigation must be of benefit to them, and the benefit must be more than an incidental benefit. Anno., supra, 8 L.Ed.2d at 907.

In the course of a reasonably diligent research, we have not found a Missouri case which is factually the same as the instant case, but it is clear from the general law that the proposition stated has been applied in situations involving the creation or protection of a fund for the benefit of the distributees of an estate or the beneficiaries of a trust. In Harrison v. Perea, 168 U.S. 311, 18 S.Ct. 129, 42 L.Ed. 478,

1. For general discussions, see Annos., 8 L.Ed.2d 894, 905–911, §§ 7 [a], [b] (1963); 107 A.L.R. 749 (1937); 49 A.L.R. 1149 (1927); Note, 35 Colum. L.Rev. 740.

2. German Evangelical St. Marcus Congregation v. Archambault, supra, 404 S.W. 2d at 709–710; Burden Central Sugar-Refining Co. v. Ferris Sugar-Mfg. Co., 5 Cir., 87 F. 810, 811–812; Paris v. Metropolitan Life Ins. Co., D.C.N.Y., 94 F.Supp. 792, 794 [1]; Anno., supra, 8 L.Ed.2d at 906.

the Supreme Court of the United States applied the rule to an action to recover the assets of a decedent's estate. In Wallace v. Fiske, 8 Cir., 80 F.2d 897, 107 A.L. R. 726, modified on rehearing 80 F.2d 905, 907–908, cert. denied Kleinschmidt v. Wallace, 298 U.S. 675, 56 S.Ct. 940, 80 L.Ed. 1397, extensively quoted and heavily relied on by the plaintiff, a beneficiary obtained a decree which quieted his title as vested remainderman in a legacy. Other similarly situated remaindermen opposed the proceeding, and did not enter judgment in favor of themselves on their remainder interests. Later, however, they relied upon the decree to prevent the imposition of taxes by the State of Missouri. The attorney for the original plaintiff remainderman petitioned for an assessment against each of the remainder estates whose interests had been spared taxation as a result of the decree he had obtained. The Court of Appeals first denied relief, but on rehearing granted it, holding, among other things, that the remaindermen's initial opposition to the action did not relieve them from bearing their share of counsel fees once they accepted the benefit of counsel's work. Wallace v. Fiske, supra, 80 F.2d at 909 [9]. In Thompson v. Smith, Ky., 268 S.W.2d 653, the principle invoked by the plaintiff was applied in a case factually quite similar to the case at hand, and in McCormick v. Hall, 337 Ill. 232, 168 N.E. 900, it was applied in an action for the construction of a will. Contribution has been required from those benefited in a wide variety of cases,[3] and we are convinced that it might properly be required here, if the facts justify an allowance to plaintiff.

In our view, the record supports the following conclusions: At the time of Mrs. McMullin's death, the estate to be distributed consisted of real and personal property of a value of some $1,400,000. At Mrs. McMullin's death, defendant, as one of the two children born to Charles F. McMullin's sister Margaret, became entitled to payment of the sum of $5,000, since Mr. McMullin had specifically bequeathed the sum of $10,000 to each of his sisters upon the death of his wife, and had provided that the heirs of any sister predeceasing the life tenant would take per stirpes the share to which the legatee would have been entitled, if living. Plaintiff, as an heir of one of the named legatees, became entitled to payment of the sum of $2,500. If, however, the will contest action had not been filed, neither plaintiff nor defendant would have received anything more, for Mrs. McMullin undertook to exercise the power of appointment conferred upon her in her husband's will, both in her will and the codicil thereto, and by including the residuary estate of Charles F. McMullin in the residuary clause of her will and the codicil thereto, Mrs. McMullin obviously undertook to blend the appointive property with her own. Therefore, had the attempted exercise of the power been merely ineffective, rather than void, at least by the general law, the whole of Mrs. McMullin's estate not disposed of by her husband's will would have passed by descent and distribution to her heirs, and not to those of her husband.[4]

Plaintiff, of course, undertook to find proof that the will was wholly invalid. He interviewed witnesses and "researched" the law. The records, or rather memoranda, offered in evidence by the plaintiff indicate that he spent a total of 1,905 working hours investigating the administration of the Charles F. McMullin estate, and in marshalling the facts and the law preparatory to the filing of the will contest action. Without commenting at this point on the necessity for all the work done by

---

3. See Anno., supra, 8 L.Ed.2d at 909–911, § 7 [b]; Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards," 69 Harv.L.Rev. 658, 663–679 (1956).

4. See generally, Bradford v. Andrew, 308 Ill. 458, 139 N.E. 922, 924–925 [8]; Old Colony Trust Co. v. Allen, 307 Mass. 40, 29 N.E.2d 310, 312 [5]; 5 American Law of Property, § 23.61(4), pp. 639–640 (Casner Ed. 1952).

the plaintiff, it is apparent that he spent a great deal of time and effort in preparing materials for presentation to a trial advocate. Plaintiff did present the results of his investigation and research to Mr. Cox, whom he knew, and on the basis of the materials presented, Mr. Cox formed the opinion that "there was an issue both as to unsoundness of mind [of the testatrix] and as to undue influence [upon her]." Using as a basis a petition which plaintiff had prepared, Mr. Cox filed the will contest action on behalf of the plaintiff, plaintiff's brother and other direct heirs of Charles F. McMullin.

The defendant did not join as a plaintiff in the will contest action. She signed no contract of employment with Mr. Cox, or with Mr. Bailey, another attorney who assisted the will contestants locally, that is, in Scott County. Miss Klein's testimony does indicate that she knew plaintiff planned to contest Mrs. McMullin's will, and that she knew in a general way about the litigation, although she was not made aware of the precise issues to be tried. She denied that she consulted any other members of the family or that the plaintiff kept her advised, as he stated.

■ Nevertheless, a settlement was effected, and by the terms of the settlement the defendant became entitled to receive over $33,000 which she would not otherwise have received. It is true enough that the provision for defendant in the settlement agreement recited that the provisions for the defendant (and two other parties who had not joined as parties plaintiff in the will contest action) were "made as third party beneficiaries," but that part of the settlement agreement went on to recite that acceptance of the benefit constituted acceptance of the "terms, conditions and provisions of this Settlement Agreement." Miss Klein, as noted, testified that she was generally familiar with the litigation which preceded the settlement and with the fact that plaintiff had instigated the action. She indicated—her words were that she "believed"—that she

had read the settlement agreement, which recited that it was being executed to avoid further litigation and "to settle all of the matters at issue * * * in said will contest suit * * *." Moreover, the settlement recited, as premises to the instrument, what matters were in issue. We consider it undeniable that defendant's acceptance of the sum of $27,083.33 (the part of her settlement benefit which she has actually received) constituted an acceptance of plaintiff's efforts and the fruits of his labors. For these reasons, we believe it would be inequitable to allow defendant to receive the benefit of plaintiff's efforts without some contribution to a fair and reasonable attorney's fee.

Having so held, however, we find it impossible upon the record presented to say with confidence what the defendant's contribution should be. The record leaves us in no doubt that the plaintiff brought considerable expertise to bear upon his study of the McMullin estate, and that he spent a great deal of his time marshalling the facts and the law involved. Nevertheless, as we have said, the evidence is voluminous but not specific, and we are left to guess, in many instances, what lines of inquiry he pursued, both factually and legally, during the 238 working days he says he spent working to create and preserve the fund from which he now seeks contribution. The specific issue presented on this particular appeal is how much the defendant should be required to contribute toward a reasonable attorney's fee for the plaintiff and what proportion of his expense she should be required to bear. The determination of a specific amount, however, depends in material part upon factors which cannot be realistically determined from the record before us. One factor to be considered is the total benefit conferred upon the heirs of Charles F. McMullin as a class. It is certain that they would have received some money regardless of the plaintiff's efforts because of the specific bequests made by Mr. McMullin in his will. Plaintiff also claims, perhaps with reason, to have protected the heirs

of Charles F. McMullin from excessive taxation, but we are left without any reliable information as to the amount of the tax saving they may have realized as the result of plaintiff's professional exertions. Moreover, the record suggests that some of the services for which plaintiff seeks to be paid were duplicative and that some of them were performed in connection with proceedings which were neither successful nor directly connected with the will contest proceeding. Some items of expense, for example, the plaintiff's claim that he should be allowed the expense of having his wife accompany him on various trips, seem questionable in any case. We need not prolong the opinion; the various factors to be considered in determining a reasonable fee for plaintiff's services and the contribution defendant should be required to make are well known and have been extensively discussed.[5]

It may be that since this case is tried here de novo pursuant to Rule 73.01(d), V.A.M.R., this court has the authority to fix the amount of an equitable contribution by the defendant, Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 1110, 145 S.W.2d 134, 137 [4]; Green v. Transitron Electronic Corporation, 1 Cir., 326 F.2d 492, 499 [5, 6], but the exercise of that authority presupposes a record upon which we as an appellate court can reasonably and justly do so, Scheufler v. Continental Life Ins. Co., supra, 350 Mo. at 893, 169 S.W.2d at 364 [4], and for many of the same reasons noted in that case we cannot fairly and confidently say what the defendant's contribution should be.

For the reasons indicated, the judgment is reversed and the cause is remanded for further proceedings in conformity with this opinion.

TITUS, P. J., and STONE, J., concur.

---

5. See German Evangelical St. Marcus Congregation v. Archambault, supra, 404 S. W.2d at 711 [11]; Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 892–893, 169 S.W.2d 359, 363–364 [1–3]; Haley v. Horwitz, Mo.App., 290 S.W.2d 414, 418 [4]; Hornstein, op. cit., 69 Harv.L. Rev. 658; 2 Barron & Holtzoff, Federal Practice & Procedure, § 570.1, pp. 338–340 (Rules Ed. 1961).