Arline JACKSON, Plaintiff-Respondent,

v.

CHEROKEE DRUG COMPANY, a Corporation, Defendant-Appellant.

No. 32884.

St. Louis Court of Appeals.

Missouri.

Oct. 15, 1968.

Motion for Rehearing or to Transfer to Supreme Court Denied Nov. 25, 1968.

On January 9, 1965, plaintiff entered defendant's drugstore as a customer and upon leaving the store she alleged that the door closed on her and struck her suddenly, violently, and with excessive force causing her to fall and be injured. Plaintiff alleged "* * * That the said front door and automatic stop or check were then and there in a defective, dangerous and unsafe condition in that said door, when opened, would close suddenly, violently, and with great and excessive force * * *."

Among the specific allegations of negligence alleged is the following: "a) Defendant knew or by the exercise of ordinary care could have known of the dangerous and defective condition of said door and the automatic check or stop attached thereto, in time thereafter to have remedied the same * * *."

Defendant first complains that the trial court erred in not directing a verdict for defendant. This complaint has two prongs; the first being that the evidence failed to establish that defendant had actual or constructive notice that its door check was defective, dangerous and unsafe; and the second being that plaintiff was guilty of contributory negligence as a matter of law in that the condition of the slamming door on defendant's premises was a condition of which plaintiff had knowledge equal to defendant.

We direct our attention to the facts essential to the determination of these points.

Ackerman, Schiller & Schwartz, Clayton, for defendant-appellant.

Glen C. Schomburg, Kirkwood, for plaintiff-respondent.

JACK A. POWELL, Special Judge.

This is an appeal from a judgment for personal injuries in favor of plaintiff in the amount of $9,500.00, which was entered after plaintiff accepted a remittitur of $2,500.00 from the jury verdict of $12,000.-00.

The defendant's drugstore was located at the corner of Cherokee and California Streets in St. Louis, Missouri. The entrance had but one door, which is the door in question. It hinged on the right as one entered the store. The door was 36 to 38 inches in width and was equipped with a thumb latch door handle. It also had a Yale door check which defendant's manager testified he put on the door two or three years prior to the incident in question. The purpose of the door check was to control the closing of the door.

Plaintiff testified that she entered the store carrying a mop and four glasses in a paper bag. She also had a purse. While in the store she purchased some shampoo. As she was leaving the store she was carrying all the packages and her purse in her right hand and arm. Another person had just entered the store and plaintiff grabbed the door handle with her left hand before the door closed. Plaintiff opened the door about two feet but no more so as not to strike the person who had just entered. She stepped out with her left foot and her right foot was in the air to step out when she was struck by the door. At the time she was struck she had let loose of the door handle with her left hand and had started holding the packages. The left portion of her body was struck first by the door. "It was very violent; it threw me out of the door and I fell on my knee." She testified she fell on her right knee and her head hit the iron post on the outside of the building. She was dazed. Her head was bleeding profusely. She was down on both knees.

Plaintiff did not in her testimony attempt to explain what caused the action of the door.

Plaintiff's husband testified that prior to January 9, 1965, he had been in the drugstore possibly 20 to 25 times, the last time being possibly a day or so prior to January 9, 1965. He testified "* * * The door closed slowly at first and banged just like that (demonstrating), and I mean it was violent. It rattled the glass; it could be heard half a block. * * * It was going on all summer that we lived—the three months of summer that we were there." He testified it was in this condition on the last occasion he was in the store prior to the incident, and that it was in this condition when he went to the store after his wife's accident, at which time she was in a doctor's office up over the drugstore.

Anna Hess, a friend of plaintiff's, who lived acoss the street from the drugstore and in an apartment up over the apartment occupied by plaintiff, testified that for several months prior to January 9, 1965, she heard the door slam when people went in and out. She testified that she also observed the slamming of the door. Because she knew it was slamming, she held onto the side of the door when going out of the drugstore.

Judy Smiley, plaintiff's daughter, age 18 at the time of the trial, testified as to how she went through the door. "Well, I walk with it, I did, I get in front of the door and I walk with it (indicating)." She had been in the drugstore on occasions without her mother and she knew the door made a bang. She did not hear any slamming of the door on the one occasion that her mother was in the store with her.

Defendant called three witnesses to testify as to the operation of the door in question. The defendant's evidence was that the door in question did not slam or bang, that the door did not close with excessive force.

■ In considering defendant's first contention that the plaintiff failed to make a submissible case, defendant recognizes the rule that we must consider plaintiff's evidence in the light most favorable to plaintiff and disregard defendant's evidence except insofar as it tends to aid the plaintiff's case. Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950; Gaffron v. Prudential Life Ins. Co., 238 Mo.App. 749, 187 S.W.2d 41.

■ Defendant does not argue that there was no evidence from which a jury could find that the door was slamming and that this brought about an unsafe condition. The crux of defendant's argument is that there was no evidence of actual or constructive knowledge on the part of defendant of a defective door check due to loss of hydraulic fluid. Defendant relies on the case of Gaffron v. Prudential Life Ins. Co., supra, a case decided by this Court, as being precisely in point. The petition in this case is very similar to that

filed in the *Gaffron* case and in view of the similarities of the two cases, a discussion of that case is appropriate.

In the *Gaffron* case the door involved was a heavy screen door. The court describes in detail the operation of the door and the automatic door check there involved. Suffice to say, the operation of the door check in that case and the door check in the case at hand, are very similar and for purposes of legal analogy, may be considered the same. The plaintiff in that case had been to visit her sick sister and was leaving the apartment building through the door in question. As she was going through the door, the door came shut suddenly " 'real sudden, just snapped right back at me.' " The door struck her hard on the right side causing her to fall. The Court said at 187 S.W.2d 41, l. c. 46 and 47:

"We think it would not aid in the solution of the problem before us to discuss the different results that would or could follow from the various possible adjustments and operating conditions of the automatic door check mechanism mentioned by plaintiff. There is no evidence whatsoever that any of the parts of the door check mechanism were broken or unworkable or missing, but notwithstanding the absence of such evidence plaintiff's own testimony that the door closed on her suddenly, violently and with great force, which we must take as true, was sufficient to warrant a finding that the manner in which the screen door struck plaintiff was caused by a lack of proper adjustment of the mechanism which controlled the operation of the automatic door check. * * *"

Here, as in the *Gaffron* case, there can be no question but that the evidence was sufficient from which the jury could infer that the door check mechanism was not in a reasonably safe operating condition and that plaintiff's injuries directly resulted from said unsafe condition.

In *Gaffron*, it was held that the evidence was not sufficient to show defendant's knowledge of such unsafe operating condition. In *Gaffron*, the plaintiff relied on the testimony of one witness, Mrs. Bloom, to show knowledge on the part of defendant. Mrs. Bloom had entered the building some ten days prior to plaintiff. On that occasion, her heel was caught by the door. The Court points out that Mrs. Bloom did not testify that the door closed on her suddenly, violently and with great force. She said it was a trivial thing and she gave it no more thought at the time.

Contrast that testimony with the testimony in this case. Two witnesses explained the caution they used when going through the door because of the manner in which it closed. These two witnesses and another, testified that the door in question had been "banging" over a considerable period of time. We have the very descriptive testimony of the witnesses as to what could be heard. * * * "it banged," "it was violent," "the glass rattled," "it could be heard one-half block." The jury, under this testimony, certainly could infer that the door check mechanism was not in a reasonably safe operating condition and further that the defendant knew or should have known of this unsafe condition.

Defendant, however, states: "* * * we have searched the record from cover to cover and fail to find one shred of evidence, let alone substantial evidence, to show that the defendant had knowledge, *of a loss of hydraulic fluid* in its door check. * * *" (Emphasis ours) Defendant unduly restricts plaintiff's theory of the case. Plaintiff's petition set forth the peril * * * "that said door when opened, would close suddenly, violently, and with great and excessive force." Plaintiff's instruction required the jury to find that "* * * 'the door check caused the door to close suddenly and with great force and violence' * * *." The peril in this case was the slamming of the door with excessive force, and not the condition of the hydraulic fluid in the door check. The jury

found that the defendant should have known of this peril in time to have remedied it and thereby avoided the injury. Plaintiff's evidence was sufficient to support such a finding.

■ With respect to defendant's contention that plaintiff was guilty of contributory negligence as a matter of law, we do not agree. Plaintiff denied that she had ever been in the store, except on one prior occasion. On that occasion, her daughter had opened the door for her. There was no evidence of the door slamming on that occasion and plaintiff's daughter explained why the door would not have slammed when she went through; i.e., "she walked with the door." But defendant argues that if the door slammed in the manner described by plaintiff's witnesses, then plaintiff must have also heard it as she lived just across the street from defendant's store. The jury found to the contrary under the instructions and the evidence on this fact issue.

Plaintiff's witnesses all testified they had observed the door slam. There is no evidence, however, that plaintiff had observed the door slam. We cannot say, as a matter of law, that plaintiff knew or should have known that this particular door was slamming in the manner described in the evidence by plaintiff's witnesses.

■ Defendant next complains that plaintiff's verdict directing Instruction No. 2 is erroneous in that it fails to require the jury to find that the defendant's door check was defective. The pertinent portion of the instruction taken from MAI 22.03 is:

" 'Your verdict must be for the plaintiff if you believe:

First, the door check caused the door to close suddenly and with great force and violence and as a result thereof the entranceway was *not reasonably safe for customers, and'* * * *."

Defendant argues, "Plaintiff's theory is that the door check became in disrepair due to a lack of hydraulic fluid." Here again, defendant mistakes plaintiff's theory of the case. It is true that plaintiff's husband testified, as a witness, that in his opinion the defect in the door check was a lack of fluid. But plaintiff's case did not stand or fall on such opinion evidence. Plaintiff charged in her petition that the front door and automatic door check were then and there "in a defective, dangerous and unsafe condition *in that* said door, when opened, would close suddenly, violently, and with great * * * force, * * *." (Emphasis ours.) In this manner, plaintiff described what made the door and door check defective, dangerous and unsafe. The petition could have omitted the word "defective" and have stated a cause of action. Plaintiff was not bound under the pleadings or under the law to prove a defective door check, as distinguished from a dangerous or unsafe one.

■ It is not contended by defendant that the instruction failed to have sufficient evidence to support it; rather, defendant contends that the jury should have been required to make a finding that the door check was *defective* due to a lack of hydraulic fluid. Defendant offered no such instruction, but on the contrary, offered Instruction No. 3 which contained language almost identical to No. 2. We believe the jury was properly instructed. Only ultimate issues should be submitted in a verdict directing instruction. Vernon's Missouri Approved Jury Instructions, pp. XVII and XVIII.

We direct ourselves to defendant's other objection to Instruction No. 2. Paragraph second reads:

" 'Second, plaintiff did not know, and by using ordinary care could not have known, of this condition,' * * *."

■ The MAI form 22.03 has no comma after the word *know* and after the word *known.* In other words, we are con-

fronted with two extra commas. We have considered defendant's argument, but we fail to find any change in the meaning of the instruction as a result of these commas. Absolute perfection in form is not the test. The test is whether the instruction is substantially correct. See Johnson v. West, Mo., 416 S.W.2d 162, which holding was approved in Brown v. St. Louis Public Service Co., Mo., 421 S.W.2d 255, l. c. 259.

We go now to another point raised by defendant. Plaintiff alleged as an injury a "rotator cuff tear or sprain and adhesive capulitis in her right shoulder area." Plaintiff testified about her right shoulder as follows:

> "It started hurting about February or March, but it was a gradual pain, but about June it really started hurting which I thought was rheumatic fever."

She testified she had never had trouble with her right shoulder before.

In answer to the hypothetic question as to causation, Doctor Fellhauer stated:

> "* * * And so again from a medical standpoint I would have to project my thinking and say, since she did show the clinical objective findings that I described, that there was a gradual fraying due to degeneration and attrition of the soft tissues involved in her present problem, and that this could have been initiated by this type of a fall that you described."

The Court then interjected the question: "* * * Well, all you can say it could have been, Doctor? A. That's right." The Court thereupon very carefully explained to the jury that the evidence did not meet the requirements of the law. It called attention to Instruction No. 1 as to guesswork and speculation and then said: "* * * Therefore, the Court must instruct you under the law and it is your duty to follow this instruction, the same as if it were in writing, that you are not to allow any damages for any injury, or give any consideration whatsoever in any ver-

dict that you may arrive at to any injury claimed, to the right shoulder as a result of this accident."

■ Notwithstanding the Court's action, defendant complains that the evidence heard by the jury may have actuated their bias and prejudice in making up their verdict on the issue of liability and the Court erred in failing to declare a mistrial. Defendant relies on two cases: Kickham v. Carter, Mo., 314 S.W.2d 902 and Hawman v. McLean, 139 Mo.App. 429, 122 S.W. 1094. In *Kickham*, a doctor testified by detailing the technique of a laminectomy operation, describing in minute detail the place and length of the incision, the amount of bone excised, and related steps in removing various membrane. Pictures of the operation with various models and charts were also introduced. The trial court granted a new trial on the ground that sympathetic and inflammatory procedures were used which were calculated to prejudice the minds of the jurors. In Hawman v. McLean, supra, the court permitted certain testimony to be heard and then later gave a withdrawal instruction. Subsequently, the trial court sustained a motion for a new trial by concluding that the error could not be cured in that case by a withdrawal instruction. In both cases, the discretion exercised by the trial court was sustained.

This is not a case where the trial court is exercising its discretion by saying that its action was prejudicial. The learned trial judge obviously concluded that no prejudice occurred, and upon the record we agree. The x-rays identified and shown were explained as being inconclusive and there was nothing in these exhibits to inflame a juror's mind. Further, there was no calculated effort to introduce improper evidence.

■ While medical testimony that an accident *could* have caused a condition, is not sufficient when standing alone to prove causation, it is admissible when there are other facts from which a jury might

find that the change in condition was caused by the accident. Ketcham v. Thomas, Mo., 283 S.W.2d 642. For a thorough review of the development of the law as to this problem, see Bertram v. Wunning, Mo.App., 385 S.W.2d 803. In the present case, plaintiff testified she had not had previous injury to her shoulder or arm. Therefore, the trial court was justified in giving plaintiff's counsel latitude in his efforts to make this proof. We are not here called on to rule whether or not the plaintiff showed such other facts as to make this testimony admissible. The jury was instructed in clear and unmistakable terms. The testimony was not inflammatory. There was no deliberate effort to introduce improper testimony. Defendant was not prejudiced.

■ Defendant's fourth point charges prejudicial error in that the trial court permitted plaintiff to argue life expectancy when no evidence had been adduced thereon. Mortality tables are included in those facts *required* to be judicially noticed because they are considered of universal common knowledge. See Hohlstein v. St. Louis Roofing Co., 328 Mo. 899, 42 S.W.2d 573, 576; and see Judicial Notice of Matters of Law and of Fact, by E. E. Andereck, Chapter 7, Sources of Proof, a Missouri Practice Handbook.

■ A fact judicially noticed is not conclusive, however, and may be rebutted as any other fact in evidence. Scheufler v. Continental Life Ins. Co., 350 Mo. 886, 169 S.W.2d 359. Proper procedure would suggest that counsel should call matters of judicial notice to the attention of the trial court during trial in order that opposing counsel might have opportunity to offer rebuttal testimony. In this case, plaintiff first mentioned judicial notice of life-expectancy in the first part of his closing argument. Defendant objected. The court sustained the objection as to arguing life-expectancy, but when such argument continued by plaintiff's counsel, the court overruled defendant's further objection.

Defendant sought no additional relief at this point. Defendant did not at that time, and does not now contend that the judicial fact referred to is incorrect. We conclude, therefore, that defendant was not prejudiced by the argument. See: Sandifer v. Thompson, Mo., 280 S.W.2d 412.

■ Defendant also contends that plaintiff's closing argument amounted to a "mathematical formula" argument. The only objection made was, "I object to the method of argument." No request was made for further relief. Even so, we have examined the argument and find none of the offensive elements contained in Faught v. Washam, Mo., 329 S.W.2d 588, except one. Plaintiff's counsel argued that plaintiff's injuries would justify an award of $4,000.00 up to the time of trial, and he suggested an over-all figure of $15,000.00. He did not try to place the jurors in the position of plaintiff. He did not try to adopt a specific formula. He only mentioned the foregoing figures and it is difficult, if not impossible, to formulize these figures in view of the argument of 23 years life-expectancy. While we do not embrace an argument which suggests a specific figure to a jury, when such figure is not properly in evidence, we do not find this argument to be prejudicially erroneous in this case.

The final point raised by defendant is that the verdict of the jury was excessive and its excessiveness is evidence of bias and prejudice.

We do not believe that the trial court abused its discretion either in ordering a remittitur, or in the amount of the remittitur ordered. Nor do we believe that the trial court abused its discretion in refusing to grant a new trial on the ground that the excessiveness of the jury verdict was the result of bias and prejudice.

■ Plaintiff's evidence disclosed her age as 48 years at the time of accident. Her head hit an iron post and bled profusely. It required ten stitches to repair.

She suffered a crushing injury to or severance of the supra-orbital nerve of the right forehead, resulting in permanent loss of sensation around the right eyebrow area. Plaintiff testified to present complaints of headaches, pain around the eye area, and of no feeling on the right side of her head when her hair is washed or combed. She complained of continuous blinking of her right eye and of watering of that eye. Doctor Lattinville found plaintiff had a depressed skull fracture with an overlying scar on her right forehead. Surgery would not improve her loss of sensation. Plaintiff also had a slight ptosis, a drooping of the eyelid. Plaintiff offered evidence of a knee injury. When she goes up and down steps her knee feels "* * * like it goes out of the socket. * * * it kind of pains."

The trial court was in a position to observe the plaintiff carefully. The extent to which plaintiff's eye waters, the extent to which there is continuous blinking, the extent to which her eyelid droops, and the over-all effect of the scar, are but a few of the considerations that place the trial court in a better position to consider the damages in this case. A comparison of other cases would be of little value for the same reason. Under the facts of this case, we do not think we should interfere with the amount of the judgment as ordered by the trial court on remittitur, nor can we say that the excessiveness of the jury verdict which the trial court found to exist, was the result of bias and prejudice.

The judgment should be affirmed and it is so ordered.

ANDERSON, P. J., and WOLFE, J., concur.